**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**CONRAAD HOEVER,**
**DC# L85966,**

      **Plaintiff,**

**v.**                            **Case No.:  4:13-cv-549-MW-GRJ**

**C. CARRAWAY, et. al,**

      **Defendants.**
_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S**
**SECOND AMENDED COMPLAINT**

    Defendants **Marks**, **Nunez** and **Paul**, (referred to individually by name or collectively as "Defendants"), file their Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 34] for: (1) failure to truthfully disclose prior court filings under penalty of perjury; (2) partial failure to state a claim; (3) partial failure to exhaust; and, (4) to the extent that it seeks damages against Defendants in their official capacities, seeks compensatory and punitive damages and seeks injunctive relief.  Defendants request that such dismissal count as a strike for the purposes of 28 U.S.C. § 1915(g).  In support, Defendants state the following:

**STATEMENT OF FACTS AND LITIGATION HISTORY**

    Plaintiff, a *pro se* prisoner in the custody of the Florida Department of Corrections ("FDOC") who has filed nine federal civil rights actions in the Northern District of Florida ("Northern District") since July 2011, filed the instant 42 U.S.C. § 1983 civil rights complaint against Defendants in their individual and official capacities.  [Doc. 34, pg. 1-3]  Plaintiff, who is currently housed at Madison Correctional Institution but was housed at Franklin Correctional Institution at all relevant times, alleges that Defendants engaged in a "campaign of customs,

practice and collusion of reprisal" to prevent him from filing grievances and otherwise complaining about the conditions of his incarceration.  [Doc. 34, pg. 2, 6]

In support of this allegation, Plaintiff alleges that on June 6, 2013, Defendant Paul threatened to physically harm an unidentified number of inmates, including Plaintiff, if they "made a threat or said [sic] anything improper against any officer," and also threatened to use chemical agents against inmates to stop them from filing grievances or otherwise threatening correctional officers.  [Doc. 34, pg. 6]  Plaintiff admits that he did not raise any complaints to any prison officials about these alleged threats.  [Doc. 34, pg. 7]

Plaintiff alleges that Captain Howard denied his June 12 and June 14, 2013 requests to make copies of unidentified documents.  [Doc. 34, pg. 7]  Plaintiff also alleges that on June 16, 2013, Officer Carraway prevented him and several other inmates from watching part of the NBA finals, then swore at them and threatened to spray them with chemical agents if they filed any grievances against him.  [Doc. 34, pg. 7]  Plaintiff alleges that he filed grievances against Captain Howard and Officer Carraway.  [Doc. 34, pg. 7]

Plaintiff alleges that on June 20, 2013, while his grievances against Captain Howard and Officer Carraway were pending, Defendants Marks and Paul approached him, set him apart from the other inmates in his housing dorm, made him promise to stop filing grievances, threatened him with disciplinary confinement and "severe consequences" if he did not stop filing grievances and only returned him to his dorm because he promised to stop filing grievances.  [Doc. 34, pg. 7-8]  Plaintiff alleges that he filed a grievance about this incident.  [Doc. 34, pg. 8]

Plaintiff alleges that on June 29, 2013, Defendant Marks approached him and said "I saw your little grievance letter you wrote.  It was very nice.  I will see you next week!"  [Doc. 34, pg. 8]  Plaintiff alleges that Defendant Paul observed this exchange.  [Doc. 34, pg. 8]  Plaintiff

alleges that he filed a grievance regarding this exchange that referenced his June 20, 2013 encounter with Defendants Marks and Paul.  [Doc. 34, pg. 8]

Plaintiff alleges that on July 20, 2013, Defendant Nunez and a K. Hampton took him out of the lunch feeding line to stand in the sun by the fence and that Defendant Nunez told him to never write another grievance against any prison official, especially Defendant Paul, claiming that Defendant Paul was "one of [his] boys."  [Doc. 34, pg. 8-9]  Plaintiff alleges that Defendant Nunez revealed that he and Defendant Paul were affiliated with a gang of prison officials (identified by face-like tattoos) that "don't give a fuck about people like [Plaintiff]."  [Doc. 34, pg. 9]  (alteration in original)  Plaintiff also alleges that Defendant Nunez threatened to starve him to death, place him in an unidentified form of confinement and empty a canister of chemical agents on him every day if he filed any grievances against any correctional officers affiliated with the gang.  [Doc. 34, pg. 9]  Plaintiff also alleges that Defendant Nunez threatened to have inmates who work for the gang assist him in his attempts to kill Plaintiff if he continued to file grievances against correctional officers affiliated with the gang.  [Doc. 34, pg. 9]  Plaintiff alleges that Defendant Nunez stated that he was giving Plaintiff a final warning to stop filing grievances and that his next grievance would be his death sentence.  [Doc. 34, pg. 9]

Plaintiff alleges that he filed a grievance and a motion in another lawsuit, Hoever v. Bellelis, Case No.: 4:13-cv-372 WS-CAS, about this incident.  [Doc. 34, pg. 10]  Plaintiff alleges that Defendant Nunez stared at him and mumbled vulgar, profane and derogatory remarks to him whenever he saw him after he filed the motion.  [Doc. 34, pg. 10]  Plaintiff also alleges that on August 2, 2013, Defendant Nunez approached Plaintiff and said "you can kiss the Judge's butt.  I am still here!  I am not going anywhere.  No one can do a damn thing to me.  I do whatever I want and no one can stop me!"  [Doc. 34, pg. 10]  Plaintiff alleges that he filed an informal

3

grievance regarding this incident, but that it was returned without action.  [Doc. 34, pg. 10]

Plaintiff alleges that various correctional officers who are not parties to this lawsuit opened his legal mail and delivered legal mail to him that was opened outside of his presence. [Doc. 34, pg. 10-11]  Plaintiff also alleges that he was in an unidentified form of confinement during an unspecified time period by a correctional officer named Captain Fletcher, who is not a party to this case.  [Doc. 34, pg. 11-12]  Plaintiff alleges that his grievances were opened and read by correctional officers who are not parties to this lawsuit while he was on confinement. [Doc. 34, pg. 11]   Plaintiff also alleges that he sent several inmate requests while on confinement, but did not receive responses to the requests.  [Doc. 34, pg. 11]

Plaintiff alleges that on August 20, 2013, at approximately 2:00AM, two unnamed correctional officers returned two opened grievances that Plaintiff filed against Defendants to him.  [Doc. 34, pg. 11]  Plaintiff alleges that they returned with Defendant Paul twenty minutes later and that Defendant Paul asked him why he wrote that he threatened him and to state when he threatened him.  [Doc. 34, pg. 11]  Plaintiff alleges that he did not answer Defendant Paul's questions and that Defendant Paul and the other correctional officers stared at him for about a minute then walked away.  [Doc. 34, pg. 11]

Based on these claims, Plaintiff alleges that Defendants violated the First Amendment by harassing and threatening him as part of a conspiracy to retaliate against him for filing grievances and lawsuits, and otherwise complaining about the conditions of his incarceration. [Doc. 34, pg. 11]  Plaintiff also alleges that Defendants violated the Due Process Clause of the Fourteenth Amendment because their actions resulted in him being placed in the aforementioned unidentified form of confinement without proper investigation and process.  [Doc. 34, pg. 12] Plaintiff also alleges that he experienced "physical injuries, personal humiliation, mental

anguish, physical and mental intimidation, blemish to his prison record, impairment of his reputation, permanent defamation and irreparable harm now and in the future" as a result of Defendants' actions.  [Doc. 34, pg. 12]  As relief, Plaintiff requests preliminary and permanent injunctions ordering Defendants to stop harassing, threatening and retaliating against him and to otherwise stop violating his constitutional rights, as well as compensatory and punitive damages. [Doc. 34, pg. 12-13]

On May 1, 2014, Plaintiff mailed his Second Amended Complaint to the Northern District on the Civil Rights Complaint Form used by the Northern District after signing it under penalty of perjury.  [Doc. 34, pg. 1, 13]  The Civil Rights Complaint Form specifically requires Plaintiff to disclose and describe his prior state and federal lawsuits that relate to the fact or manner of his incarceration or the conditions of his confinement.  [Doc. 34, pg. 3]  Plaintiff reported that he filed the following cases: (1) Hoever v. Bellelis, Case No.: 4:13-cv-372-WS-CAS ("Bellelis"); (2) Hoever v. Tucker, Case No.: 2011 CA 3711; (3) Hoever v. Crews, Case No.: 4:13-cv-73-RH-GRJ ("Crews"); (4) Hoever v. Parker, Case No.: 5:11-cv-254-MP-GRJ ("Parker"); and, (5) Hoever v. Florida, Case No.: 07-4083-CF-10A.  [Doc. 34, pg. 3-6]

Plaintiff did not report that he filed Hoever v. Tucker, Case No.: 2011 CA 1245 ("Tucker").  [Doc. 34, pg. 4]  Moreover, Plaintiff initially included information pertaining to Tucker in his Second Amended Complaint, and then crossed out all references to it before filing his Second Amended Complaint.  [Doc. 34, pg. 4]  Plaintiff also included information pertaining to Tucker in his complaints in the following actions: (1) Hoever v. Fletcher, Case No.: 4:14-cv-220-RH-CAS ("Fletcher"); and, (2) Hoever v. Howard, Case No.: 4:14-cv-229-RH-GRJ ("Howard"), which he mailed to the Northern District on the exact same date that he mailed his Second Amended Complaint using the exact same Civil Rights Complaint Form that he used to

write his Second Amended Complaint.[1][2]   [Fletcher Doc. 1, pg. 3-4; Howard Doc. 1, pg. 3-4] Tucker is a Petition for Writ of Mandamus filed in the Second Judicial Circuit in and for Leon County, Florida that was dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing it. [Fletcher Doc. 1, pg. 3-4; Howard Doc. 1, pg. 3-4]

Plaintiff also reported in his Second Amended Complaint that Crews was currently "[p]ending" in the Northern District.  [Doc. 34, pg. 4-5]  The Northern District dismissed Crews with prejudice on April 25, 2014, after adopting this Court's Report and Recommendation recommending that Crews be dismissed for misjoinder, failure to comply with a Court order and failure to state a claim, and recommending that such dismissal count as a "strike" pursuant to 28 U.S.C. § 1915(g).  [Crews Docs. 20 & 23]  Plaintiff initially reported in his complaints in Fletcher and Howard that Crews was on appeal to the Eleventh Circuit after being dismissed for failure to comply with a court order, and then crossed out all such references, instead making handwritten alterations to the complaints to indicate that Crews was pending in the Northern District. [Fletcher Doc. 1, pg. 4; Howard Doc. 1, pg. 4]

Plaintiff also reported in his Second Amended Complaint that Parker was currently on appeal to the Eleventh Circuit.  [Doc. 34, pg. 5]  This Northern District dismissed Parker with prejudice on October 29, 2013, after adopting this Court's Report and Recommendation recommending that Parker be dismissed for misjoinder and failure to comply with a Court order.

---

[1] On May 1, 2014, Defendant sent his Second Amended Complaint in this case, as well as his Complaints in Fletcher and Howard, to the appropriate official at Madison Correctional Institution for mailing to the Northern District.  The Northern District docketed Plaintiff's Complaints in Fletcher and Howard on May 2, 2014.  [Fletcher Doc. 1; Howard Doc. 1]  The Northern District docketed Plaintiff's Second Amended Complaint on May 6, 2014.  [Doc. 34]

[2] All references to other cases filed by Plaintiff are cited by the name of the leading Defendant in such case, followed by the docket entry and page number on which the referenced information is located.

[Parker Docs. 80 & 87]   The Eleventh Circuit dismissed Plaintiff's appeal of the Northern District's Order of Dismissal for "want of prosecution" on March 14, 2014, six weeks before Plaintiff's mailed his Second Amended Complaint to the Northern District.   [Parker Doc. 102] Plaintiff also reported that Parker was currently on appeal to the Eleventh Circuit in his complaints in Fletcher and Howard. [Fletcher Doc. 1, pg. 5; Howard Doc. 1, pg. 4-5]

The Civil Rights Complaint Form also requires Plaintiff to indicate whether Plaintiff ever had an action filed in Federal Court "dismissed as frivolous, malicious, failing to state a claim, or prior to service," and, "[i]f so, [to] identify each and every case so dismissed." [Doc. 34, pg. 6] (alteration in original).   Plaintiff reported in his Second Amended Complaint and in his complaints in Fletcher and Howard that he never had an action filed in federal court dismissed as frivolous, malicious, for failure to state a claim or prior to service." [Doc. 34, pg. 6; Fletcher Doc. 1, pg. 5; Howard Doc. 1, pg. 5]   However, as previously mentioned, the Northern District dismissed Crews and Parker for failure to comply with a Court order and, with respect to Crews, for failure to state a claim. [Parker Docs. 80 & 87; Crews Docs. 20 & 23]

## MOTION TO DISMISS STANDARD

In deciding a motion to dismiss, the Court must accept all well-pleaded factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).   "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Dismissal is warranted if, assuming the truth of the factual allegations of the complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Courts generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside of the complaint when ruling on a motion to dismiss. SFM Holdings, Ltd v. Banc of Amer. Secs., LLC, 600 F.3d 1334 1337 (11th Cir. 2010).  However, in addition to the allegations of a complaint, courts can consider documents central to or referenced in the complaint and matters that are judicially noticed when ruling on a motion to dismiss without converting it into a motion for summary judgment. La Grasta v. First Union Sec., Inc., 358 F. 3d 840, 845 (11th Cir. 2004) ("In analyzing the sufficiency of the complaint, we limit our consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.").  Courts can take judicial notice of filings in separate court actions when ruling on a motion to dismiss without converting it into a motion for summary judgment. Ebeh v. St. Paul Travelers, 2010 WL 5553687 at *3 (M.D. Fla. Oct. 6, 2010) (requiring court to take judicial notice of prior state court actions on motion to dismiss); see Jacobs v. Comerford, 2013 WL 6184052 at *4 (N.D. Fla. Nov. 25, 2013) (taking judicial notice of prior cases filed by plaintiff in federal civil rights action).

## MEMORANDUM OF LAW

### I.  Plaintiff failed to fully and truthfully disclose his prior litigation history

Plaintiff declared under penalty of perjury that the information contained in the

8

Complaint was true and correct.  [Doc. 34, p. 13]  Nevertheless, Plaintiff: (1) intentionally failed to disclose Tucker; (2) intentionally misrepresented the status of Crews and Parker to obscure the fact that they were dismissed pursuant to 28 U.S.C. § 1915(e)(2); and, (3) stated that he never had an action filed in federal court dismissed as frivolous, malicious, for failure to state a claim or prior to service.  [Doc. 34, pg. 3-6]

Plaintiff failed to fully and truthfully disclose his prior cases, notwithstanding the instruction to do so in the Civil Rights Complaint Form.  Plaintiff's failure to disclose prior litigation activity is considered an abuse of the judicial process.  Hood v. Tompkins, 197 F. App'x 818, 819 (11th Cir. 2006) ("A district court may impose sanctions if a party knowingly files a pleading contained [sic] false contentions.").  Courts in the Eleventh Circuit that have encountered this issue have repeatedly upheld dismissal without prejudice for the type of conduct exhibited by the Plaintiff in this case.  Id.; Sanders v. Hemphill, 2012 WL 2870804 (M.D. Fla. 2012); Bratton v. Secretary, DOC, 2012 WL 2913171 (M.D. Fla. 2012); Sills v. Marion County Jail, 2010 WL 2367237 (M.D. Fla. 2010); Williams v. Wiggins, 2010 WL 4983665, at *2 (M.D. Fla. 2010); Rolle v. Crosby, 2005 WL 3087863, *2 (M.D. Fla. 2005); McElwain v. Parrish, 2012 WL 570009 (N.D. Fla. 2012), report and recommendation adopted by, 2012 WL 569578 (N.D. Fla. 2012); Johnson v. Crawson, 2010 WL 1380247 (N.D. Fla. 2010), report and recommendation adopted by, 2010 WL 1380228 (N.D. Fla. 2010); Hinson v. Escambia County Sheriff's Dept., 2009 WL 1606517 (N.D. Fla. 2009); Gissendanner v. Howard, 2005 WL 1126855 (M.D. Fla. 2005); Crook v. Devers, 2005 WL 1126865 (M.D. Fla. 2005).  As recognized by other courts:

> The court has the authority to control and manage matters such as this pending before it, and plaintiff's *pro se* status does not excuse him from conforming to acceptable standards in approaching the court.  If the court cannot rely on the statements or responses made by the parties, it threatens the quality of justice.

> The court will not tolerate false responses or statements in any pleading or motion filed before it.  Here, plaintiff falsely responded to a question on the complaint form, as detailed above. Plaintiff knew, from reading the complaint form, that disclosure of all prior actions was required and that dismissal of this action may result from his untruthful answers.  **If plaintiff suffered no penalty for his untruthful responses, there would be little or no disincentive for his attempt to evade or undermine the purpose of the form.**  Therefore, this court should not allow plaintiff's false responses to go unpunished.  The undersigned recommends that an appropriate sanction for plaintiff's abuse of the judicial process in not providing the court with true and complete responses is to dismiss this cause without prejudice.  Plaintiff should also be warned that such false responses, filed herein or filed in the future, will not be ignored and may result in more severe and long-term sanctions.  <u>See, e.g.</u>, <u>United States v. Roberts</u>, 308 F.3d 1147 (11th Cir.2002) (inmate convicted of perjury for false statement made on pleading filed in federal court).

<u>Paulcin v. McNeil</u>, 2009 WL 2432684, at *3 (N.D. Fla. 2009) (emphasis added); <u>see also</u> <u>Sills</u>, 2010 WL 2367237, at *3 (finding that the plaintiff's "failure to provide truthful responses on the complaint is an abuse of judicial process" and then dismissing the complaint because "[t]he Court refuses to tolerate false responses or incomplete statements in any pleading or motion filed for consideration by the Court").

The purpose behind questioning an inmate regarding any prior actions on the civil rights complaint form, as noted by Judge Antoon, is that:

> The information also helps the court to consider whether the action is related to or should be considered in connection with another action, or whether a holding in another action affects the current action. Further, since prisoner plaintiffs generally proceed pro se, the information helps the court to determine their litigation experience and familiarity with the legal terrain of the current action.

<u>See</u> <u>Williams v. Wiggins</u>, 2010 WL 4983665, at *2 (quoting <u>Johnson v. Crawson</u>, 2010 WL 1380247, at *2).  Equally important is that because prisoner litigation has become a sort of recreational activity for those who have little to lose and everything to gain[3], *pro se* inmate

---

[3] <u>See</u> <u>Harris v. Garner</u>, 216 F.3d 970, 991 (11th Cir. 2000) (citing to the Congressional Record and statements by Senators Dole and Kyl).

litigants must be held accountable for their actions if they choose to initiate federal civil rights litigation. As noted by Magistrate Judge Elizabeth Timothy:

> If Plaintiff suffered no penalty for his untruthful responses, there would be little or no disincentive for his attempt to evade or undermine the purpose of the form. **Furthermore, if word spread around the prisons that the questions on the complaint form could be circumvented in such a manner, the court might be confronted with widespread abuse from its many prisoner litigants.** Therefore, this court should not allow Plaintiff's false responses to go unpunished.

Johnson v. Crawson, 2010 WL 1380247, at *2 (emphasis added); see also Hood, 197 F. App'x at 819 (affirming district court's dismissal without prejudice of civil rights case based on the plaintiff's failure to list prior lawsuits because the question on the complaint form asking about prior lawsuits in federal court was not ambiguous); Rolle v. Crosby, 2005 WL 3087863, *2 (dismissing case without prejudice based on the plaintiff's failure to list prior cases on complaint).

Conversely, if a prisoner's failure to abide[4] by the requirements of the federal courts is promptly and appropriately addressed by the Court, word could spread through the prison populations that the federal courts will not tolerate a cavalier attitude even by *pro se* inmate litigants.  Holding the *pro se* inmate litigant responsible for the representations in his pleadings and imposing sanctions with teeth, could promote prisoner respect for the federal courts, lessen the impact on efficiency cited by Magistrate Judge Timothy[5] through more thoughtful and truthful inmate pleadings, and certainly not hurt rehabilitative efforts.

---

[4] Even if the plaintiff *may not have intended to deceive*, because the court relies on the statements and responses submitted, such dishonesty concerning filing history threatens the quality of justice.  See Brown v. Overstreet, 2008 WL 282689, at *1 (S.D. Ga. 2008).

[5] See Johnson v. Crawson, 2010 WL 1380247, at *2; see also Cochran v. Gilo, 2010 WL 716536, at *1 (N.D. Fla. 2010) (dismissal as a sanction due to the plaintiff's dishonesty in listing prior federal cases and failure to exhaust); see also Jackson v. Martin, 2011 WL 833995, at *4 n.3 (N.D. Fla. 2011) (noting that dismissal would be appropriate on the grounds that failure to disclose prior litigation is considered *malicious* due to the plaintiff's abuse of judicial process).

Plaintiff has completed this Civil Rights Complaint Form on three separate occasions in this action.  [Docs. 1, 29 & 34]  After reading this form three times, and declaring under penalty of perjury that the facts contained in his Second Amended Complaint were true and correct, Plaintiff signed his Second Amended Complaint.   [Doc. 34, p. 13]   The Second Amended Complaint fully replaced all prior pleadings.  Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1215 (11th Cir. 2006) ("[a]n amended pleading supersedes the former pleading; 'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary'") (citation omitted).   However, a review of Plaintiff's prior state and federal case history demonstrates that the declaration in his Second Amended Complaint that he has *not initiated* any other cases about his confinement or conditions thereof, beyond the cases Plaintiff did report, is absolutely false.

Plaintiff, who has filed nine cases in the Northern District since June 2011, failed to disclose Tucker in his Second Amended Complaint.  [Doc. 34; Fletcher Doc. 1, pg. 3-4; Howard Doc. 1, pg. 3-4] This failure is intentional, as Plaintiff initially listed Tucker in his Second Amended Complaint, and then made the conscious decision to cross out all references to it before filing his Second Amended Complaint with this Court.  [Doc. 34, pg. 4]  Plaintiff also was not confused about the fact that he needed to disclose this case.  Plaintiff has used the Civil Rights Complaint Form to file several cases in the Northern District and used the Civil Rights Complaint Form to file his previous two complaints in this case (which listed Tucker).  [Doc. 1 & 29]  Plaintiff also disclosed Tucker in Fletcher and Howard, which, as previously mentioned, he mailed to the Northern District on the exact same date that he mailed his Second Amended Complaint.  [Fletcher Doc. 1, pg. 3-4; Howard Doc. 1, pg. 3-4]

Plaintiff also misrepresented the status of Crews and Parker in his Second Amended

Complaint.  [Doc. 34, pg. 4-5]  Plaintiff reported that Crews was pending in the Northern District.  [Doc. 34, pg. 5]  However, the Northern District dismissed Crews with prejudice on April 25, 2014, after adopting this Court's Report and Recommendation recommending dismissal.  [Crews Docs. 20 & 23]  Plaintiff's misrepresentation is intentional.  As previously stated, Plaintiff is very familiar with the Northern District's Civil Rights Complaint Form.  Plaintiff also initially reported in his complaints in Fletcher and Howard that Crews was on appeal to the Eleventh Circuit after being dismissed for failure to comply with a court order (implying that he knew Crews was dismissed and intended to appeal the Order of Dismissal), and then crossed out all such references, instead making handwritten alterations to the complaints to indicate that Crews was pending in the Northern District.  [Fletcher Doc. 1, pg. 4; Howard Doc. 1, pg. 4]  Plaintiff further reported in his Second Amended Complaint that Parker was on appeal; however, the Eleventh Circuit dismissed this appeal on March 14, 2014, six weeks before Plaintiff filed his Second Amended Complaint.  [Doc. 34, pg. 5-6; Parker Docs. 80, 87 & 102]

Plaintiff also incredulously reported in his Second Amended Complaint that he never had a federal action "dismissed as frivolous, malicious, failing to state a claim, or prior to service." [Doc. 34, pg. 6]  This is completely false.  The Northern District dismissed Crews and Parker as malicious.  Rivera v. Allin, 144 F. 3d 719, 731 (dismissal of case for abuse of the judicial process constitutes a strike pursuant to 28 U.S.C. § 1915(g)) (abrogated on other grounds by Jones v. Bock, 549 U.S. 199, 215-16 (2007)); Malautea v. Suzuki Motor Co., Ltd., 987 F. 2d 1536, 1544 (11th Cir. 1993) (dismissal for failure to comply with a Court order constitutes a dismissal for abuse of the judicial process); Huffine v. United States, 25 Cl. Cr. 462, 464 (Cl. Ct. 1992) (pro se litigant's refusal to comply with Court orders was an "abuse of the judicial process"); Cleveland v. Johnson, 2007 WL 2176030 at * 2 (N.D. Fla. July 24, 2007) (dismissing

*pro se* inmate's complaint as malicious for abuse of the judicial process). The Northern District also dismissed <u>Crews</u> for failure to state a claim. [<u>Crews</u> Docs. 20 & 23]

Plaintiff's startling lack of candor towards this Court is especially egregious because he failed to fully and truthfully disclose his prior litigation in multiple other cases that he filed in the Northern District. The Honorable Charles A. Stampelos recently dismissed <u>Hoever v. Caper</u>, Case No.: 4:14-cv-273-WS-CAS ("<u>Caper</u>"), for abuse of the judicial process. [<u>Caper</u> Doc. 5] In <u>Caper</u>, Judge Stampelos found that Plaintiff's complaint, which was written on the Northern District's Civil Rights Complaint Form, contained several false statements. [<u>Caper</u> Doc. 5] Judge Stampelos found that Plaintiff failed to disclose three federal cases that he previously filed and, like in this case, failed to acknowledge that <u>Crews</u> and <u>Parker</u> were dismissed for reasons which count as strikes under 28 U.S.C. 1915(g). [<u>Caper</u> Doc. 5, pg. 2-4] Instead, like in this case, Plaintiff falsely reported that <u>Crews</u> was pending and <u>Parker</u> was on appeal. [<u>Caper</u> Doc. 5, pg. 2-4] Judge Stampelos also found that Plaintiff falsely reported that he never had any action in federal court dismissed as frivolous, malicious, failing to state a claim or prior to service. [<u>Caper</u> Doc. 5, pg. 1-2]

The Northern District also recently dismissed <u>Hoever v. Bockelman</u>, Case No.: 4:14-cv-275-RH-GRJ ("<u>Bockelman</u>"), in an order adopting this Court's Report and Recommendation recommending dismissal for abuse of the judicial process. [<u>Bockelman</u> Docs. 8 & 10] In <u>Bockelman</u>, this Court described Plaintiff's prolific filings in the Northern District in detail "to underscore that the Plaintiff is fully acquainted with the Court's complaint form and knows full well the requirements in the form to list other federal litigation and to accurately disclose the status and disposition of any cases." [<u>Bockelman</u> Doc. 8, pg. 4] This Court then found that Plaintiff failed to disclose three federal cases, including this case, despite filing his Second

Amended Complaint in this case only four days before he submitted his complaint in <u>Bockelman</u> for typing at Madison Correctional Institution.   [<u>Bockelman</u> Doc. 8, pg. 4-5]   This Court ultimately concluded that:

> "[a]s evidenced by Plaintiff's prolific litigation history over the last few years," Plaintiff knows full well what he is doing and knows what he is required to include on a complaint form.   Plaintiff failed to do so here not because of excusable oversight but because Plaintiff has attempted to obscure the fact that his multiple filings may suggest that he is an abusive filer."

[<u>Bockelman</u> Doc. 8, pg. 7]

Plaintiff has no excuse for failing to fully and truthfully disclose his prior litigation history.   Plaintiff's intentional failure to truthfully disclose his prior litigation history demonstrates his utter lack of candor to this tribunal, which is even more egregious considering that he has repeatedly failed to fully and truthfully disclose his prior litigation history to this Court and other courts in the Northern District.   Rule 11(b), Federal Rules of Civil Procedure requires candor and honesty in any submission to the court.   Rule 41(b) Federal Rules of Civil Procedure, provides for involuntary dismissal under these circumstances.   Chapter 28 U.S.C. § 1915(e)(2)(B)(i), allows the court to dismiss an action at any time if found to be malicious.

## II.   <u>Plaintiff fails to state a claim for any Fourteenth Amendment Due Process Violation</u>

As previously stated, the allegations in a complaint survive a motion to dismiss only when they rise above the speculative level.   <u>James River Ins. Co., supra.</u>; <u>Twombly</u>, <u>supra.</u> Conclusory allegations fail to state a claim and are subject to dismissal.   <u>Iqbal</u>, <u>supra</u>. Additionally, while pro se litigants are entitled to the benefit of having their pleadings liberally construed, a court cannot "rewrite an otherwise deficient pleading in order to sustain an action." <u>GJR Investments, Inc. v. County of Escambia, Fla.</u>, 132 F. 3d 1359, 1369 (11th Cir. 1998) (overruled on other grounds by <u>Iqbal</u>).

Plaintiff's only alleges that his Fourteenth Amendment due process rights were violated in connection with his claim that he was placed in an unidentified form of confinement without proper investigation or process.  [Doc. 34, pg. 12]  Plaintiff does not allege any facts providing any details whatsoever into his confinement, the investigations and processes he claims he did not receive or how any actions Defendants undertook resulted in this confinement.  [Doc. 34] Plaintiff only makes the conclusory allegation that Defendants "compulsive efforts and conspiracy of threats, retaliation, harassment, resulted in him being placed in confinement." [Doc. 34, pg. 12]  However, Plaintiff simultaneously alleges that a Captain Fletcher placed him in confinement, not Defendants.  [Doc. 34, pg. 12]  These conclusory and speculative allegations are insufficient to state a claim for a Fourteenth Amendment due process violation.  Accordingly, Plaintiff's Fourteenth Amendment due process claims should be dismissed.

### III.   Plaintiff failed to exhaust all of his claims

All state prisoners are required to exhaust their administrative remedies through the inmate grievance procedures contained in Chapter 33-103, Florida Administrative Code, before filing any civil complaint related to their care and custody.  See Adlington v. Mosley, 757 So. 2d 573, 574 (Fla. 4th DCA 2000).  Pursuant to 42 U.S.C. § 1997e(a), "no action shall be brought" by a prisoner under any federal law until the prisoner has exhausted "all administrative remedies as are available."  In Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000)(rehearing en banc), the court stated, "The decisions we have laid out show that for more than a century before the enactment of the PLRA, it was well established that 'brought' and 'bring' refer to the filing or commencement of a lawsuit, not to its continuation."  Thus, in the Eleventh Circuit, "brought" means at the commencement of the suit.  Id. at 972-80.  "Exhaustion is no longer left to the discretion of the district court, but is mandatory."  Woodford v. Ngo, 548 U.S. 81, 85 (2006).  In

16

determining whether a plaintiff has exhausted his administrative remedies, a court does "not review the effectiveness of those remedies, but rather whether remedies were available and exhausted." Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (citation omitted).  Also, "exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983." Ngo, 548 U.S. at 85.

The Florida Department of Corrections ("FDOC") generally provides a three-step grievance procedure.  First, an inmate must normally file an informal grievance.  See Fla. Admin. Code R. 33-103.005.  If the issue is not resolved, the inmate must then file a formal grievance at the institutional level.  See Fla. Admin. Code R. 33-103.006.  If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the FDOC.  See Fla. Admin. Code R. 33-103.007.  The timeframes for the filing of any grievances are set forth in the FDOC's rules.  See Fla. Admin. Code R. 33-103.011.

In this case, Plaintiff did not exhaust his administrative remedies with respect to his allegation that Defendant Paul threatened him on June 6, 2013 because Plaintiff admits in his Second Amended Complaint that he did not even attempt to exhaust his administrative remedies with respect to this claim.  [Doc. 34, pg. 6-7]  Rather, Plaintiff alleges that he "did not complain to prison official about that threat."  [Doc. 34, pg. 7]  Completion of the exhaustion requirement means properly completing each step of the prison's grievance procedures.  Jones v. Bock, 549 U.S. 199, 219 (2007); Johnson v. Meadows, 418 F.3d 1152, 1158 (11th Cir. 2005).  As such, this claim should be dismissed for failure to exhaust.  Jones, 549 U.S. at 219-221 (2007) (unexhausted claims in a complaint are subject to dismissal); Alexander v. Hawk, 159 F. 3d 1321, 1328 (11th Cir. 1998) (affirming dismissal of complaint for failure to exhaust administrative remedies); see also Ngo, 548 U.S. at 90 ("The PLRA exhaustion requirement

requires *full and proper* exhaustion.") (emphasis added).

## IV.   Defendants are entitled to Eleventh Amendment immunity on all official capacity damages claims.

"Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court...."   See, Gamble v. Florida Dept. of Health and Rehabilitative Services, 779 F.2d 1509, 1511 (11th Cir. 1986) (citations omitted).   Moreover, "this will bar damage awards against state officers sued in their official capacities in suits brought in federal court pursuant to 42 U.S.C. §§ 1983...."   Gamble, 779 F.2d at 1512.   Even if Plaintiff's complaint sought nominal damages instead of compensatory and punitive damages, nominal damages requests are still subject to Eleventh Amendment Immunity.   Simmons v. Conger, 86 F.3d 1080, 1086 (11th Cir. 1996).   States and state officials acting in their official capacities are not persons for the purposes of lawsuits brought pursuant to Title 42 U.S.C. § 1983 when sued for damages.   Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, n. 10 (1989). A court shall dismiss a case at any time if the court decides the action "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §§1915(e)(2)(B)(iii).

In this case, Defendants are state officials employed by the State of Florida.   The State of Florida has not waived sovereign immunity for constitutional torts (state or federal) and, therefore, cannot be sued for monetary damages.   See Garcia v. Reyes, 697 So. 2d 549, 550 (Fla. 4th DCA 1997) (citing Hill v. Dept. of Corr., 513 So. 2d 129, 133 (Fla. 1987)).   Plaintiff is attempting to sue Defendants in part in their official capacities and requests compensatory and punitive damages.   [Doc. 34, pg. 3, 13]   Therefore, Defendants raise the defense of sovereign immunity to the extent that Plaintiff seeks damages from them in their official capacities.   All such claims must be dismissed.

**V.     Plaintiff's claims for compensatory and punitive damages are barred because he failed to allege the requisite physical injury under 42 U.S.C. 1997e(e).**

"No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  Under 42 U.S.C. § 1997e(e), compensatory and punitive damages are unavailable absent a physical injury.  See, e.g., Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) (abrogated on other grounds by Sossamon v. Texas, 131 S. Ct. 1651 (2011)); Slicker v. Jackson, 215 F.3d 1225, 1229 (11th Cir. 2000) ("compensatory damages under § 1983 may be awarded only based on ***actual injuries*** caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated") (emphasis supplied). The physical injury requirement applies to all federal claims, including constitutional claims. Harris v. Garner, 216 F.3d 970, 984-85 (11th Cir. 2000).  The physical injury requirement is applied equally to all constitutional claims and does not distinguish between those that are frequently accompanied by physical injuries (e.g. Eighth Amendment violations) and those rarely accompanied by physical injury (e.g. First Amendment violations).  Al-Amin v. Smith, 637 F. 3d 1192, 1197 (11th Cir. 2011).

While § 1997e(e) does not define "physical injury," the Eleventh Circuit has held that "in order to satisfy the statute, 'the physical injury must be more than *de minimis*, but need not be significant.'" Daughtry v. Moore, No. 08–00215–KD–C, 2009 WL 1151858, *5 (S.D.Ala. Apr. 27, 2009) (citing Dixon v. Toole, 225 F.App'x 797, 799 (11th Cir. 2007)); see also Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002) ("to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*."); Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir. 1999), vacated, 197 F.3d 1059, reinstated in relevant

part, 216 F.3d 970, 972 (11th Cir. 2000) (en banc).  This requirement supports the goal of the

PLRA, which is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who

have little to lose and excessive amounts of free time with which to pursue their complaints."

Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002).

       In Luong v. Hatt, 979 F.Supp. 481 (N.D. Texas 1997), the District Court offered a widely

accepted definition for the purposes of 42 U.S.C. § 1997e(e), which holds that a condition must

rise to the level where it requires the attention of a medical care professional in order to be a

"physical injury":

> A physical injury is an observable or diagnosable medical
> condition requiring treatment by a medical care professional. It is
> not a sore muscle, an aching back, a scratch, an abrasion, a bruise,
> etc., which last even up to two or three weeks. People in regular
> and ordinary events and activities in their daily lives do not seek
> medical care for the injuries they receive unless it obviously
> appears to be of a serious nature, or persists after home remedy
> care. Thus, the seriousness of the injury needed to rise above *de
> minimis*, would under Sigler v. Hightower, supra, require more
> than the types and kinds of bruises and abrasions about which the
> Plaintiff complains. Injuries treatable at home and with over-the-
> counter drugs, heating pads, rest, etc., do not fall within the
> parameters of 1997e(e).

Luong, 979 F.Supp. at 486 (N.D. Texas 1997).  While the Eleventh Circuit has not adopted this

precise definition of a "more than *de minimis*" injury, it has been applied by United States

District Courts in every state in the Eleventh Circuit.[6]

_____

[6] See Watkins v. Trinity Service Group, No. 8:05-cv-1142-T-24MSS, 2006 WL 3408176, *4
(M.D.Fla. Nov. 27, 2006)(applying Luong); Green v. Grace, No. 3:08CV406–RV/AK, 2010 WL
63078, *3-4 (N.D.Fla. Jan. 5, 2010)(same); Harvey v. Teal, No. 5:08CV339-RH/AK, 2010 WL
427435, *5 (N.D.Fla. Jan. 5, 2010) (same); Daughtry, 2009 WL 1151858, *5 (same); Johnson v.
Moody, No. Civ.A. 05-0196-WSM, 2006 WL 898135, *7 (S.D.Ala. Mar. 29, 2006) (same);
Anderson v. Jones, No. Civ.A.98–0632–RV, 1999 WL 1565203, *6 (S.D.Ala. Dec. 16, 1999)
(same), aff'd without opinion, 245 F.3d 795 (11th Cir.2000); Talley v. Johnson, No. 4:07-CV-
177 (CDL),  2008 WL 2223259, *3 (M.D.Ga. May 1, 2008) (same); Johnson v. Muscogee
County Jail, No. 4:07-CV-51 (CDL), 2008 WL 597792, *2 (M.D.Ga. Mar. 13, 2008) (same);

Plaintiff does not allege that he suffered a physical injury other than to make the conclusory allegation that he "experienced physical injuries." [Doc. 34, pg. 12]  This conclusory allegation is insufficient to state a claim for a physical injury.  Iqbal, supra.  Plaintiff's conclusory allegations of "personal humiliation, mental anguish, physical and mental intimidation, blemish to his prison record, impairment to his reputation, permanent defamation and irreparable harm" even if they were properly plead, are not physical injuries for the purposes of the PLRA.  Johnson v. Patterson, 519 Fed. Appx. 610, 612-13 (11th Cir. 2013) (allegations of mental anguish, anxiety and depression did not warrant compensatory or punitive damages absent a physical injury); Miller v. Baldwin, 2013 WL 1499566 at * 5 (March 15, 2013) (allegations that plaintiff suffered stress, anxiety, depression and anger are not physical injuries); Canon v. Burkybile, No. 99 C-4623, 2000 WL 1409852, *6 (N.D.Ill. July 25, 2000) (headaches, insomnia, stress, and stomach anxiety did not meet the physical injury requirement of § 1997e(e)); Montero v. Cruise, 153 F. Supp. 2d 368, 377-378 (S.D.N.Y. 2001) (because inmate alleged only severe stress, depression, and psychological pain and not "a palpable physical injury in conjunction with his claims for mental and emotional suffering," damages were barred by § 1997e(e)); Cain v. Commonwealth of Va., 982 F.Supp. 1132, 1135 & n. 3 (E.D.Va.1997) (unbearable headaches, being subject to public embarrassment and humiliation, vision loss, numbness in arms and legs, joint pain, stomach cramps, lower back pain, blackouts were not a sufficient physical injury to recover under § 1997e(e) for mental injury).  As such, Plaintiff's claims for compensatory and punitive damages must be dismissed.

---

Johnson v. Bainbridge Public Safety, Nos. 1:07-CV-141 (WLS), 6:06-CV-47 (WLS), 2007 WL 2593969, *5 (M.D.Ga. Sept. 5, 2007) (same); Radford v. Johnson, No. 4:05-CV-80 (CDL), 2006 WL 2927578, *6 (M.D.Ga. Oct. 12, 2006) (same). This definition has also been cited positively by both the Third and Sixth Circuits as well. See Perez v. United States, 330 F.App'x 388, 389 (3rd Cir. 2009); Jarriett v. Wilson, 162 F.App'x. 394, 401 (6th Cir. 2005).

**VI.**    **Plaintiff's request for injunctive relief is moot.**

"Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'" <u>Smith</u>, 502 F.3d at 1266 (quoting <u>Mingkid v. U.S. Att'y Gen.</u>, 468 F.3d 763, 768 (11th Cir.2006)). The exercise of jurisdiction by the federal courts "depends upon the existence of a case or controversy." <u>North Carolina v. Rice</u>, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) (citation and internal quotation marks omitted). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." <u>Powell v. McCormack</u>, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). "Put another way, [a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." <u>Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehabilitative Servs.</u>, 225 F.3d 1208, 1217 (11th Cir.2000) (citations and internal quotation marks omitted).

Therefore, "[i]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." <u>Al Najjar v. Ashcroft</u>, 273 F.3d 1330, 1336 (11th Cir. 2001) (citation omitted). In fact, "dismissal is required because mootness is jurisdictional." <u>Id.</u>, citing <u>Florida Ass'n of Rehab. Facilities</u>, 225 F.3d at 1227 n. 14; <u>see</u> also <u>Rice</u>, 404 U.S. at 246 ("The question of mootness is ... one which a federal court must resolve before it assumes jurisdiction."). "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." <u>Florida Ass'n of Rehab. Facilities</u>, 225 F.3d at 1217, citing <u>Hall v. Beals</u>, 396 U.S. 45, 48 (1969).

As a general rule, transfer to a different correctional institution renders an inmate's claim for injunctive relief in an action brought under 42 U.S.C. § 1983 moot. <u>Wahl v. McIver</u>, 773 F.

2d 1169, 1173 (11th Cir. 1985); McKinnon v. Talladega County, Ala., 745 F. 2d 1360, 1363 (11th Cir. 1984) (transfer of inmate to another correctional institution rendered claim for injunctive relief moot even though inmate had no control over transfer absent evidence that defendants attempted to evade the court's jurisdiction); Orange v. Wainwright, 486 F. 2d 1047, 1048 (5th Cir. 1973) (dismissing complaint alleging abusive treatment while confined in one correctional institution because plaintiff was transferred to another correctional institution and did not allege that any violations occurred at the second correctional institution or seek relief from any officials there).

Plaintiff requests injunctive relief against Defendants, correctional officers at Franklin Correctional Institution, stemming from events that allegedly took place at Franklin Correctional Institution.  [Doc. 34, pg. 2]  Plaintiff has been transferred from Franklin Correctional Institution to Madison Correctional Institution.  [Doc. 34, pg. 2]  Plaintiff does not allege that he has had any contact with Defendants or suffered any harassment or retaliation since being transferred to Madison Correctional Institution.  [Doc. 34]  As a result, there is no current case or controversy between Plaintiff and Defendants, making this Court unable to grant Plaintiff any meaningful injunctive relief.  Rice, supra; Fla. Ass'n of Rehab. Facilities, supra.  Accordingly, Plaintiffs request for an injunction directing Defendants to stop harassing and retaliating against him and to stop violating his constitutional rights is moot.  Wahl, supra; McKinnon, supra; Orange, supra.[7]

---

[7] Even if Plaintiff's request for injunctive relief was not moot, it would still be subject to dismissal.  A preliminary injunction is an "extraordinary and drastic remedy." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (quoting All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)).  To secure a preliminary injunction, a party must prove four elements: (1) a substantial likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) the injury outweighs whatever damage an injunction may cause the opposing party; and (4) an injunction is not adverse to the public interest.  Id. (citing Citizens for Police Accountability Comm. v. Browning, 572 F.3d 1213, 1217 (11th Cir. 2009) (per curiam)). The movant must clearly establish the burden of persuasion as to

## CONCLUSION

Wherefore, based on the foregoing, Defendant respectfully requests that this case be dismissed without prejudice as malicious, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), for Plaintiff's abuse of the judicial process.[8]  Defendants also request that this case be dismissed for partial failure to state a claim and partial failure to exhaust, and to the extent that it seeks damages against Defendants in their official capacities, seeks compensatory and punitive damages and seeks injunctive relief.  Defendants further request that such dismissal count as a strike for the purposes of 28 U.S.C. § 1915(g) if this Court dismisses this case as frivolous, malicious or for failure to state a claim, or for seeking monetary damages against a defendant who is immune from such damages.

Respectfully submitted,

**PAMELA JO BONDI
ATTORNEY GENERAL**

/s/ Eric Gonzalez
Eric Gonzalez
Assistant Attorney General
Florida Bar No. 92757
Office of the Attorney General
The Capitol, Suite PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300 - Telephone
(850) 488-4872 - Facsimile
Eric.Gonzalez@myfloridalegal.com
*Attorney for Defendants*

---

all four prerequisites.  Id. at 1306.  Plaintiff has not alleged any facts showing that he meets these requirements.  Moreover, a permanent injunction is only available to a party who has already prevailed in establishing the violation of the right asserted in his complaint.  See, e.g., Thomas v. Bryant, 614 F.3d 1288, 1317 (11th Cir. 2010).

[8] Lying to the court under penalty of perjury about the existence of prior lawsuits is both an abuse of judicial process and a "strike" under 28 U.S.C. § 1915(g).  Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998), abrogated on other grounds, Jones v. Bock, 549 U.S. 199, 214-216, 127 S. Ct. 910 (2007); see also Crummie v. Veloz, 2010 WL 5059560, at *2 (S.D. Fla. 2010).

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Motion to Dismiss Plaintiff's Second Amended Complaint* has been furnished by U.S. mail to: Conraad Hoever, DC# L85966, Madison Correctional Institution, 382 Southwest MCI Way, Madison, Florida, 32340-4430, on this 18th day of August, 2014.

<u>/s/ Eric Gonzalez</u>
Eric Gonzalez
Assistant Attorney General