IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CONRAD L. HOEVER

      Plaintiff,

v.                                                        CASE NO. 4:13-cv-549-MW-GRJ

MARKS, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate serving a sentence in the custody of Florida Department of Corrections ("FDOC"), initiated this case by filing a *pro se* complaint in the Northern District of Florida on the Northern District of Florida's civil rights complaint form for prisoners in actions under 42 U.S.C. § 1983. (ECF No. 1.)  The case is presently before the Court on ECF No. 73, Defendants' Motion for Summary Judgment. Plaintiff has filed a response in opposition, ECF No. 79, and therefore the motion is ripe for review.  For the reasons discussed below, the undersigned recommends that Defendants' motion be granted with respect to Defendant Paul and denied with respect to Defendants Marks and Nunez.

# I. BACKGROUND

Plaintiff is an inmate in the custody of the FDOC, currently housed at Madison Correction, in Madison, Florida.  At all times relevant to this cause of action, Plaintiff was incarcerated at Franklin Correctional Institution, in Carrabelle, Florida.  Plaintiff alleges that as a result of pending lawsuits against the FDOC that he has been subject to threats and deprivation of his rights by officers and prison officials.

Specifically, Plaintiff alleges that on June 6, 2013, Defendant Paul threatened that he would physically harm inmates with chemical agents if they made a threat or spoke out against an officer.  Plaintiff contends he did not alert prison officials about the threat.

Plaintiff alleges that he filed two grievances against the library officer on June 12, 2013 and June 14, 2013.  Plaintiff avers that while these grievances were pending, on June 20, 2013, Defendants Marks and Paul took Plaintiff to a vestibule and threatened him not to submit more grievances because Officer Bellelis had a stack of grievances on his desk and he "does not come to work to answer Plaintiff's grievances."  Plaintiff contends that Defendants Marks and Paul forced him to say he would not write any more grievances before they would let him leave. Plaintiff alleges

that he wrote a grievance based on that threat, and the grievance was denied.

On June 29, 2013, Plaintiff claims that Defendant Marks threatened him in response to a previously submitted grievance while Defendant Paul watched.  Plaintiff claims that Defendant Marks walked up to Plaintiff's bunk and said "I saw your little grievance letter you wrote.  It was very nice.  I will see you next week!"  Plaintiff alleges that he wrote a grievance about this threat and referenced the June 20th incident.  Plaintiff says that the grievance was returned because the reviewing officer determined it was too general and the intent was unclear.  Plaintiff then alleges that he wrote a formal grievance and submitted it on July 16, 2013.

On July 20, 2013, Plaintiff claims that Defendant Nunez told him to never again write a grievance against another prison official, especially against Defendant Paul because he was "one of [his] boys."  Plaintiff alleges that Defendant Nunez lifted his sleeve to show him his tattoo which he indicated was a gang symbol.  Plaintiff contends that Defendant Nunez told him Plaintiff that Nunez was affiliated with a gang of prison officials.  Plaintiff then alleges that Defendant Nunez told him that if he submitted another grievance against Defendant Paul or any of the other gang

members, he would starve him to death, use chemical agents on him every day and place him in confinement.  Plaintiff alleges that Defendant Nunez said he would get other inmates to help kill Plaintiff.  Plaintiff says that Defendant Nunez told Plaintiff that this was a formal and final warning before Nunez's gang members would launch their attack to kill Plaintiff. Plaintiff alleges that Defendant Nunez said "the next grievance that would cross prison officials' desk with [Plaintiff's] name, would do it and be [Plaintiff's] death sentence."  Plaintiff contends that he wrote a formal grievance to the warden which was sent to the inspector's office.

Plaintiff alleges that on July 24, 2013, he filed a motion about the threats in case no. 4:13-CV-372-WS/CAS.  Plaintiff says that after he filed that motion, Defendant Nunez made derogatory, vulgar and profane remarks toward Plaintiff when he saw Plaintiff around the compound.

On August 2, 2013, Plaintiff claims that Defendant Nunez took Plaintiff outside and said "I am not going anywhere. . . I do whatever I want and no one can stop me!"  Plaintiff states that he walked away. Plaintiff alleges that he again filed an informal grievance about the encounter on August 3, 2013 which was returned.  Plaintiff says that he did not tell anyone he filed the motion with the court and assumed that one of the

officers opened his legal mail.  On September 17, 2013, Plaintiff alleges

that he was delivered legal mail that had been opened.

Plaintiff claims that all of the grievances he received were opened by

the officers and read.  On August 20, 2013, he alleges that at

approximately 2:00 AM., two officers brought two open grievances returned

to him.  He says that twenty minutes later the officers returned with

Defendant Paul, who began to question Plaintiff about why he wrote that

Defendant Paul threatened him.  On August 22, 2013 at approximately

7:00 AM, Plaintiff contends that an officer delivered another informal

grievance he had written against Defendant Nunez, which also was

opened.

Plaintiff alleges that Defendants' threats, retaliation and harassment

against him for submitting grievances violates his right to free speech

under the First Amendment of the Constitution.  He also claims that

Defendants' conspiracy of threats and retaliation resulted in Plaintiff being

placed in confinement.  According to Plaintiff, he was not afforded a proper

investigation, which constituted due process violations under the

Fourteenth Amendment.  Plaintiff claims that he suffered "physical injuries,

personal humiliation, mental anguish, physical and mental intimidation,

blemish to his prison record, impairment of his reputation, permanent defamation, and irreparable harm now and in the future." Plaintiff requests declaratory and injunctive relief as well as compensatory and punitive damages.  Plaintiff also seeks "any additional relief" that the Court deems appropriate. (ECF No. 34 at 6-13.)

Defendants filed a motion to dismiss, *inter alia,* on the grounds that Plaintiff had abused the judicial process, failed to state a claim, failed to exhaust, and that some of the claims were subject to Eleventh Amendment immunity. (ECF No. 45.)  The Court granted the motion in part dismissing Plaintiff's claims for violation of due process, Plaintiff's claims against Defendants in their official capacity, Plaintiff's claims for compensatory and punitive damages, and Plaintiff's claims for declaratory and injunctive relief. (ECF Nos. 51 & 57.)   Consequently, the only claims that remained were Plaintiff's First Amendment claims for retaliation against Defendants Marks, Nunez and Paul requesting nominal damages

## II. DEFENDANT'S 56(e) EVIDENCE

The evidence submitted by Defendants in support of their motion for summary judgment will includes the following:

### 1. Informal Grievance Log Numbers 1306-P-057, 1306-P-060,

### *1306-P-084, 1306-P-102, 1307-P-002, 1308-P-034*

Defendants have included copies of six informal grievances filed by the Plaintiff. (ECF No. 73-2; ECF No. 73-3; ECF No. 73-4; ECF No. 9; ECF No.73-12; ECF No. 73-21.)  ECF No. 73-12 also contains corresponding formal grievances, appeals and responses.

### *2. Declaration of Robert Marks*

Defendant Marks denies that he retaliated against Plaintiff for filing grievances or for any other reasons. Defendant Marks denies ever having threatened Plaintiff. (ECF No. 73-5.)

### *3. Declaration of John Nunez*

Defendant Nunez denies taking action against Plaintiff in retaliation for filing grievances or for any other reasons.  He denies that he ever threatened Plaintiff.  Nunez claims that he asked Plaintiff why he filed a grievance against Officer Paul but maintains that he did not threaten him during this conversation.  Nunez also contends that he told Plaintiff: "his friend," a judge, did not have Defendant Nunez fired, but denies threatening or harassing him during that conversation.  Nunez states that he does have a tattoo but is not affiliated with any prison gang. (ECF No. 73-6.)

### 4. Declaration of Caleb Paul

Defendant Paul denies taking action against Plaintiff in retaliation for filing grievances or for any other reason.  Paul denies that he ever threatened Plaintiff. (ECF No. 73-7.)

### 5. Excerpts of Plaintiff's Deposition

Defendants have also submitted excerpts of Plaintiff's deposition taken on May 27, 2015. (ECF No. 73-8.)

### 6. MINS Incident Reports 0000500788, 0000510180

Defendants have filed two MINS incident reports. The first report was filed by the Assistant Warden in response to the incident on June 25, 2013 (ECF No. 73-10.)  The second report was filed by Defendant Nunez, who was instructed to file a report pertaining to a grievance filed against him by Plaintiff.  (ECF No. 73-23).  Defendant Nunez stated that he did not recall harassing Plaintiff.  *Id.*

### 7. Incident Reports 113-2013-780, 113-2013-959, 113-2013-1034

Defendants have submitted three incident reports, which had been filed by various correctional employees in response to grievances filed by Plaintiff.  Defendant Marks filed an incident report in reference to Grievance Log Number 1306-P-102 filed by Plaintiff.  (ECF No. 73-11.)

Defendant Marks outlined in his report that on June 28, 2013, he does not recall having any conversation with Plaintiff and maintains that he has not made any threatening remarks towards him.  *Id.*  Colonel Bellelis filed an incident report in response to Plaintiff's Grievance Log Number 1307-113-056.  (ECF No. 73-20.)  Defendant Nunez, at the direction of Colonel Bellelis, submitted an incident report pertaining to Grievance Log Number 1308-P-034.  (ECF No. 73-22.)  Defendant Nunez maintains he does not recall harassing Plaintiff or any inmate.  *Id.* at 1.

### 8.  Photographs of John Nunez's Tattoo and Tattoo Logo

Defendants have submitted two photographs: one depicting Defendant Nunez's tattoo on his right arm and the other depicting the logo that inspired the tattoo's design.  (ECF No. 73-16; ECF No. 73-17.)

### 9.  Log of Grievance Appeals

Defendants submitted a log of appeals filed by Plaintiff. (ECF No. 73-15.)

### 10.  Motion to Issue a Temporary Restraining Order

Defendants have included a copy of Plaintiff's motion to issue a temporary restraining order against the defendants in another case and several other correctional officers.  (ECF No. 73-18.)

### 11. Plaintiff Confinement Information

Defendants have filed a log of Plaintiff's internal movements within the FDOC. (ECF No. 73-24.)

### 12. Disciplinary Report

Defendants have included a disciplinary report packet for Disciplinary Report Log Number 113-130951. (ECF No. 73-25.) The report details that on August 17, 2013, Plaintiff was charged with creating a disturbance. *Id.* at 1. On August 22, 2013, Plaintiff was found guilty of the violation. *Id.* at 15.

### 13. Declaration of Shirley A. Johnson

Shirley Johnson, an operations analyst employed by the FDOC, states that she reviewed Plaintiff's grievance records. She maintains that the records reflect that the only grievances received by the Bureau of Inmate Grievance Appeals were the following: log numbers 13-6-22506, 13-6-22909, 13-6-22868, 13-6-24969, 13-6-25674. (ECF No. 73-13.)

### 14. Declaration of Rebecca Villanueva

Rebecca Villanueva, a classification officer at Madison Correctional Institution, avers that she reviewed the classification file of Plaintiff. She maintains that the records reflect that between August 20, 2013 and

September 30, 2013, the FDOC did not receive any formal or informal grievances from Plaintiff that referenced Defendant Paul. (ECF No. 73-26.)

## III. PLAINTIFF'S RESPONSE

Plaintiff has submitted the following evidence in opposition to the motion for summary judgment:

### 1.  *Affidavit of Richard Davidson*

Richard Davidson, a fellow inmate, swears that on June 29, 2013, he and several other inmates witnessed Defendant Marks confront Plaintiff about a grievance Plaintiff wrote.  (ECF No. 79 at 21.)

### 2.  *Affidavit and Declaration of George Rivera*

George Rivera, a fellow inmate, avers that he has witnessed several inmates being targeted with threats, false disciplinary reports.  He maintains that he personally witnessed Defendants Marks, Nunez and Paul single out Plaintiff for writing grievances.  Rivera says that on or about June 29, 2013, he witnessed Defendant Marks threaten Plaintiff with false disciplinary reports if he did not stop submitting grievances.  On or about July 20, 2013, he contends that he saw Defendant Nunez pull Plaintiff out of the lunch line and place Plaintiff against the fence where Nunez proceeded to threaten Plaintiff.  (ECF No. 79 at 22-26.)

### 3.  Affidavit of Darien James

Darien James, a fellow inmate, says in his affidavit that he

remembers Defendant Paul threatening inmates.  James maintains that he

has seen scare tactics utilized by correctional officers on Plaintiff and

others. (ECF No. 79 at 45-46.)

### 4.  Answers and Objections to Plaintiff's First Set of Interrogatories to Defendant Nunez

Plaintiff has included Defendant Nunez's answers and objections to

Plaintiff's "First Set of Interrogatories to Defendant Nunez."  (ECF No. 79 at

27-44.)

### 5. Copies of Defendants' Exhibits

Plaintiff has filed the following grievances, appeals and incident

reports: Informal Grievance Log Numbers 1307-P-002, 1308-P-034;

Grievance Appeal Log Number 13-6-22506, 13-6-22909, 13-6-22868, 13-

6-24969; Formal Grievance Log number 1307-113-056; Incident Report

113-2013-959.  (ECF No. 79 at 45-70.)

## III. SUMMARY JUDGEMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of

summary judgment is appropriate only when the Court is satisfied that

"there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."  *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."  *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed

matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006).  Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact.  *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## IV. DISCUSSION

Defendants request the Court to enter summary judgment in their favor on Plaintiff's First Amendment claims because Plaintiff's allegations fail to state a claim for retaliation, Plaintiff's claims are unsupported by the evidence of record and because Plaintiff's claims were not exhausted properly before suit was filed. Defendants also argue they are entitled to qualified immunity.

## A. First Amendment Claims

Plaintiff asserts that Defendants threatened and harassed him for writing grievances, and as a result, he has suffered physical injuries, personal humiliation and other irreparable harm.  (ECF No. 34 at 11-12.)

The Eleventh Circuit has established a three-part test to determine

whether Plaintiff has an actionable First Amendment claim.  Plaintiff must establish each of the three elements:

(1) his speech was constitutionally protected;

(2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and

(3) there is a causal relationship between the retaliatory action and the protected speech.

*Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005); *see also*

*Smith v. Mosley,*  532 F.3d 1270, 1276 (11th Cir. 2008).  Plaintiff bears the

burden of proof on all three elements. The Court will address Plaintiff's

claims against Defendants Marks, Nunez, and Paul in the context of the

three-part *Bennett* test.

### 1.  Defendant Marks

Plaintiff claims that on June 20, 2013, Defendant Marks came to E-dorm and threatened Plaintiff against writing grievances, including making Plaintiff promise not to write any more grievances or else face "severe consequences."  Plaintiff alleges that on June 29, 2013, after Plaintiff wrote a grievance about the June 20th encounter, Defendant Marks walked up to Plaintiff's bunk and said "I saw your little grievance letter you wrote.  It was

very nice.  I will see you next week!"

With regard to this claim of retaliation, Plaintiff has satsified the first element of the *Bennett* test, as his speech—filing grievances against prison guards—is constitutionally protected speech.  It "is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement."  *Mosley,* 532 F.3d at 1276.  "It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints."  *Id.*

As to the second part of the test that required the inmate to show that he suffered "adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech," Plaintiff presents evidence that Defendant Marks threatened him against filing further grievances. Inmate Richard Davidson avers in his declaration that he observed Defendant Marks come into E-dorm on June 29, 2013 and confront Plaintiff regarding a grievance Plaintiff wrote.  (ECF No. 79 at 21.)  Additionally, inmate George Rivera avers in his declaration that Defendant Marks repeatedly singled out

Plaintiff for threats, harassment, physical intimidation, and reprisals for writing grievances and filing civil rights complaints.  (ECF No. 79 at 22-25.) Rivera states that he observed Defendant Marks approach Plaintiff at his bunk on June 29, 2013 and threatening Plaintiff with false disciplinary reports, gang assaults, physical intimidation, and continuing harassments if Plaintiff did not stop filing grievances and civil rights complaints.  *Id*. Defendant Marks denies these allegations.  He states in his declaration that he did not interact with Plaintiff on either June 20 or June 29.  (ECF No. 73-4.)

While Defendant Marks categorically denies these allegations and affirmatively avers that he never interacted with Plaintiff on either June 20 or June 29, (ECF No. 73-4), the conflict in the testimonial evidence cannot be resolved on summary judgment. Rather, the differences in the testimony creates a material issue of fact that is better resolved by a jury. Thus, because there is a genuine material issue of fact as to whether Defendant Marks threatened Plaintiff, there is an issue as whether such threats, if made, are sufficient to "deter a person of ordinary firmness" from continuing to file grievances.

According to Defendant Marks, even if these threats occurred, his

actions are insufficient to establish a claim for retaliation because mere

threats and verbal abuse do not state a constitutional claim unless the

officer carries out the threat.  Defendants argument is applicable to a claim

under the Eighth Amendment and not, as here, a claim under the First

Amendment.  As the Eleventh Circuit has held, the "gist of a retaliation

claim is that a prisoner is penalized for exercising the right of free speech.

The penalty need not rise to the level of a separate constitutional violation."

*Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989).  Thus, even

though Plaintiff's allegations are insufficient to support a separate

constitutional claim the threats can support a retaliation claim if the threats

are such as to deter a person of ordinary firmness from exercising his right

to free speech by filing grievances.

Defendant Marks says that  *Pittman v. Tucker*, 213 F. App'x 867

(11th Cir. 2007)— a case where a threat from a prison official was held to

constitute a valid retaliation claim—is distinguishable.  According to

Defendant, the officers making the alleged threat in *Pittman* were either

responsible for reviewing inmate grievances or threatening the plaintiff with

false disciplinary reports, which in turn was sufficient to deter the inmate

from filing grievances.  Defendant Marks says that because he is not

involved with the grievance process any threats he allegedly made against Plaintiff would be insufficient to deter Plaintiff from filing grievances.

In *Pittman*, the plaintiff claimed that a captain and a lieutenant made threats of physical violence against him to prevent him from filing grievances.  Applying the *Bennett* test the Eleventh Circuit found that the captain's statement could be interpreted as a threat of physical violence that prison officials would do "something drastic" if the plaintiff continued to file grievances.  The court, there, stated that a reasonable jury could find the threat was sufficient to deter a person of ordinary firmness from filing additional grievances because the captain was in a position of authority and reviewed grievances.  The court also found that the lieutenant's[1] statement that plaintiff should "[l]earn to play the game or have a boot put in your ass" could be interpreted as a threat of physical violence and also could deter an inmate from filing grievances.  Accordingly, the Eleventh Circuit in *Pittman* reversed the district court's grant of summary judgment on these two retaliation claims.

While it is true that the Eleventh Circuit in *Pittman* referred to the

---

[1]The Eleventh Circuit refers to this defendant alternatively as both a "Lieutenant" and "Sergeant."

captain's position of authority in analyzing whether a person of ordinary firmness could be deterred from filing grievances, there is no requirement under the *Bennett* test that the official retaliating against the inmate be in a position of significant authority with regard to reviewing the grievances.

Courts repeatedly have recognized retaliation claims against correctional officers without requiring that the correctional officer have a position of reviewing grievances or that the correctional officer have some involvement in the grievance process.  *See, e.g.*, *Boxer X v. Harris*, 437 F.3d 1107 (11th Cir. 2006)(inmate stated a retaliation claim against a guard because he claimed he was punished for filing grievances against her); *Cummings v. Harrison*, 695 F. Supp. 2d 1263 (N.D. Fla. 2010)(fact issue precluded summary judgment on retaliation claim where plaintiff presented evidence that correctional officers used physical harm and threats of harm as a response to the plaintiff's grievances); *Wilson v. Silcox*, 151 F. Supp. 2d 1345 (N.D. Fla. 2001)(death threats made by correctional officer in response to lawsuit filed by Plaintiff were sufficient to deny summary judgment for defendant on retaliation claims).

A reasonable jury—assuming they found that Defendant Marks made the alleged threats— could also find that these threats would deter a

person of ordinary firmness from filing grievances.[2]   Accordingly, Plaintiff

satisfies the second part of the *Bennett* test.

Finally, for Plaintiff to establish a claim for retaliation, Plaintiff must

show a causal connection between the grievances he filed and the actions

of Defendant Marks.  A prisoner can show a causal connection between

the protected speech and the retaliation by alleging "a chronology of

events that creates a plausible inference of retaliation."  *O'Bryant v. Finch*,

2008 WL 691689 (N.D. Fla. Mar. 12, 2008).

Here, Plaintiff's evidence does just that.  Plaintiff has provided the

grievances he filed which he contends prompted the confrontation with

Defendant Marks, thus creating a reasonable inference that Marks

threatened Plaintiff to keep Plaintiff from filing grievances.  Defendant

Marks, of course, denies making the threats, thus leaving for resolution

---

[2] Defendant Marks also argues that the June 29 incident, where Marks allegedly stated that "I saw the grievance you wrote.  It was very nice.  I will see you next week!" cannot constitute a retaliation claim because a plaintiff must allege more than a "*de minimus* inconvenience" to the exercise of his First Amendment rights to demonstrate that an inmate of ordinary firmness would be deterred from filing grievances.  *Bethel v. Town of Loxley*, 221 F. App'x 821, 813 (11th Cir. 2006).  However, in the context of Marks's previous alleged threat, a reasonable jury could find that the June 29 statement was a threat of physical harm towards Plaintiff.  *See Bennett*, 423 F.3d at 1255 (stating that a jury could find that a "prolonged campaign of harassment" against the plaintiffs could be sufficiently retaliatory to chill the plaintiffs' exercise of First Amendment rights).  Viewed together, a jury could conclude that Marks' alleged actions deterred Plaintiff from exercising his right to free speech.

before a jury the issue of whether the threats were made in the first place.

Defendant Marks says this is not enough to demonstrate a causal connection between the grievances and Marks's alleged threats.  Marks says that an inmate must allege more than unsubstantiated allegations to demonstrate a causal connections.  *Kirkland v. Everglades Correctional Institution*, 2014 WL 1333212 at *9 (S.D. Fla. Mar. 31, 2014).  While this ic correct, Plaintiff here has provided more than simply his own unsubstantiated allegations.  Rather, Plaintiff has submitted declarations from at least two other inmates as support for Plaintiff's version of events.  These declarations lend credence to Plaintiff's claim that Defendant Marks threatened him due to the numerous grievances he filed.  Whether Marks made the threats remains to be seen. But determination of this issue is not the province of this Court on summary judgment.  Because there is sworn evidence supporting each version of events, the Court concludes there is a genuine dispute of a material fact which precludes entry of summary judgment. Defendants' Motion for Summary judgment, therefore, must be denied as to Plaintiff's claims against Defendant Marks.

## 2.  Defendant Nunez

With regard to Plaintiff's claims against Defendant Nunez Plaintiff

alleges the following.

On July 20, 2013, Defendant Nunez took Plaintiff out of the lunch line to stand by the fence.  Nunez told Plaintiff to "never again write a grievance against any prison official, especially Correctional Officer Paul, because Defendant Paul was 'one of [his] boys.'" Plaintiff claims that Defendant Nunez showed him a tattoo and indicated that it was a symbol of the gang that he and Defendant Paul belonged to that "[doesn't] give a fuck about people like you."  Defendant Nunez then stated if Plaintiff wrote another grievance about Nunez, Paul, or any other gang members, he would starve Plaintiff, spray him with chemical agents every day, and would have prison officials and other inmates attack and possibly kill him.  Nunez told Plaintiff that this was his final warning and he would give him Plaintiff one last chance to straighten out, but if he [Plaintiff] wrote another grievance, it would be his "death sentence."  Plaintiff claims that on August 2, in response to a motion he filed against Defendant Nunez in a separate civil case, Defendant Nunez told  Plaintiff "you can kiss the Judge's butt.  I am still here!  I am not going anywhere.  No one can do a damn thing to me.  I do whatever I want and no one can stop me!"

Plaintiff's allegations satisfies the first prong of the *Bennett* test,

because filing grievances and civil lawsuits constitute protected speech.

As to the second element—whether Defendant's actions would likely deter

Plaintiff from engaging in protected speech— Plaintiff's claims that Nunez

made threats of starvation, threats that he would use chemical agents, and

threats of physical violence, including death threats.

As support for these claims Plaintiff relies upon the declaration of

inmate George Rivera. Rivera avers that he observed Officer Nunez pull

Plaintiff from the lunch line on July 20, 2013 and threaten Plaintiff with

bodily harm, false disciplinary reports, and gang attacks. (ECF No. 79 at

22-26.)

On the other hand, Defendant Nunez avers that he recalls pulling

Plaintiff from the lunch line to ask him why he filed a grievance against

Officer Paul and that he was curious about why he filed the grievance.

(ECF No. 73-5.)  Defendant Nunez states that he also said to Plaintiff "hey

buddy, your buddy the judge had me fired." *Id.*

While both parties acknowledge that the interactions occurred, their

versions of events differ, creating a genuine issue of material fact.  Taking

all reasonable inferences in favor of Plaintiff (as the Court is required to do

on a motion for summary judgment) the Court concludes that a reasonable

jury could find that Defendant's threats were sufficient to deter Plaintiff from filing grievances.  *See, e.g., Wilson*, 151 F. Supp. 2d 1345 (N.D. Fla. 2001)**.**

In support of his request for summary judgment Defendant Nunez advances the same argument as Defendant Marks. Defendant Nunez says that the "threats" he made to Plaintiff cannot constitute a claim for retaliation because mere threats and verbal abuse are insufficient to state a constitutional claim.  As discussed above, however, the standard is whether Plaintiff was penalized for exercising his First Amendment rights. The "penalty" does not have to rise to the level of a constitutional violation by itself.  Threats and verbal abuse may be sufficient to satisfy the "deterrence" aspect for a claim of retaliation.

Defendant Nunez also argues that his lack of involvement in the grievance process evidences that his threats would not deter an inmate of ordinary firmness from filing grievances.  Again, as explained above, under *Bennett* the issue is not whether the officer making the threat was either involved in the grievance process or was a significant figure of authority. Rather, the issue is simply whether the officer's actions would chill the plaintiff's exercise of his First Amendment rights. Whether these threats

are sufficient to deter a person of ordinary firmness from engaging in such speech is an issue to be resolved by a jury. But, assuming the threats were made, the Court concludes that evidence of threats of use of chemical agents, starvation, and physical violence by a correctional officer who is in a position to carry out these threats, could cause a reasonable jury to conclude that such threats deterred Plaintiff from filing grievances, a form of protected speech.

As to the causal connection between Defendant's actions and Plaintiff's speech, Defendant Nunez cannot credibly argue that Plaintiff has failed to show any connection between the grievances filed and the alleged threats.  Plaintiff has produced evidence that Nunez took him aside and threatened him against filing grievances.  Indeed, Defendant Nunez's argument that Plaintiff has no evidence demonstrating that Nunez knew about the grievances Plaintiff filed is not credible, as Nunez admits in his declaration that he pulled Plaintiff aside to question him about the grievance Plaintiff filed against Defendant Paul.

Accordingly, the Court concludes that a reasonable jury could find for Plaintiff on all three prongs of the *Bennett* test and, therefore, summary

judgment in favor of Defendant Nunez is due to be denied.[3]

### 3.  Defendant Paul

Plaintiff claims that Defendant Paul with Defendant Marks approached him on June 20, 2013 in Plaintiff's dorm and took Plaintiff to a vestibule.  Once there, Plaintiff says that Paul and Marks threatened Plaintiff against filing more grievances because Officer Bellelis had a stack of grievances from Plaintiff on his desk and Officer Bellelis "does not come to work to answer Plaintiff's grievances."  Defendant Paul and Marks then made Plaintiff promise to not write any more grievances or else they would take him to confinement or make him face "severe consequences" for his remaining eleven years in confinement.  Plaintiff alleges that on June 29, 2013, Defendant Paul watched as Defendant Marks stated to Plaintiff "I saw your little grievance letter you wrote.  It was very nice.  I will see you next week!"  Plaintiff claims that on August 20, 2013, Defendant Paul questioned Plaintiff as to why Plaintiff filed a grievance stating that Paul

_____

[3]Defendant Nunez also argues that the August 2 incident (in which Nunez told Plaintiff that the judge never had him fired) is a *de minimus* inconvenience to Plaintiff's First Amendment rights and therefore fails to state a claim for retaliation.  However, based on the evidence presented by Plaintiff, a reasonable jury could find that Defendant Nunez's statement was part of a "prolonged campaign of harassment" by Defendant Nunez and was sufficient to chill the exercise of Plaintiff's First Amendment rights.  Therefore, summary judgment is due to be denied as to this claim.

threatened him.  Plaintiff was silent, and Paul stared at him for "about one minute" before walking away.

In his declaration, Defendant Paul states that he does not recall being present at any meeting between Plaintiff and Defendant Marks on June 20 or June 29, and denies speaking with Plaintiff on August 20.  (ECF No. 73-6.)  In Plaintiff's deposition, he testified that during the June 20 incident, Defendant Paul was standing there and "wasn't saying anything." (ECF No. 73-7 at 7.)  Similarly, with respect to the June 29 incident, Plaintiff testifed in his deposition that Defendant Paul did not say anything, but was watching from afar.  (ECF No. 73-7 at 8.)

Based on this evidence the Court concludes that no reasonable jury could find that Defendant Paul's actions penalized Plaintiff for exercising his right of speech.  While there is a dispute over what actually happened, as Defendant Paul denies the June 20 and 29 encounters, Plaintiff's version of events is at most, benign.  Simply because Defendant Paul may have been present at the June 20 and 29 encounters is not sufficient to state a claim for retaliation.  Paul said nothing and did nothing, other than staring at Plaintiff.

Similarly, although Defendant Paul denies any interaction with

Plaintiff on August 20, Plaintiff's evidence, at most, shows Defendant Paul

merely questioning Plaintiff regarding a grievance.[4]  Drawing all reasonable

inferences in favor of Plaintiff, the Court concludes that none of the

Defendant Paul's alleged actions are sufficient to deter an inmate of

reasonable firmness from filing additional grievances. Accordingly,

summary judgment should be entered in favor of Defendant Paul.

## B.  Qualified Immunity

Defendants Marks and Nunez argue that they are entitled to qualified

immunity from suit.  The defense of qualified immunity protects government

officials "'from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S.

223, 231, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818, 102 S. Ct. 2727, 2738)).[5]  The doctrine balances the

---

[4]The grievance record evidences that even if Plaintiff stated a claim of retaliation against Defendant Paul with respect to the August 20 incident, this claim is likely unexhausted because Plaintiff did not file any grievances between August 20, 2013 and September 26, 2013, the date he filed this lawsuit.  (ECF No. 73-26.)

[5]The only relief available to Plaintiff is nominal damages.  However, nominal damages are still precluded by qualified immunity.  *Wilson v. Moore,* 270 F. Supp. 2d 1328, 1355 (2003) (citing *Fox v. Board of Trustees of State Univ. of N.Y.,* 42 F.3d 135, 141-42 (2d Cir. 1994)).

competing but equally important goals of affording officials immunity from

suit for reasonable actions taken within the scope of their duties and

holding those officials responsible who abuse their power.  *Id.*

The Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct.

2151 (2001) laid out a two step test for determining whether the actions of

a government official fall outside the scope of qualified immunity.  The

Court held that in analyzing a qualified immunity case a court should first

ask whether, "on the facts alleged, a constitutional violation could be

found."  *Id.* at 206, 121 S. Ct. at 2159.  Next, the court must determine

whether the violation alleged is clearly established in the law, such that a

reasonable government official would be aware that he is bound by its

prohibitions.  *Id.* at 202, 121 S. Ct. at 2156.  In *Pearson*, the Court receded

slightly from its holding in *Saucier*, holding that a court may decide in its

discretion "which of the two prongs of the qualified immunity analysis

should be addressed first in light of the circumstances in the particular

case at hand."  555 U.S. at 236, 129 S. Ct. at 818.

Following *Saucier*, the Court must first determine whether, on the

facts alleged, a constitutional violation could be found.  533 U.S. at 206,

121 S. Ct. at 2159.  For the reasons discussed above, Plaintiff has stated a

claim for First Amendment retaliation against Defendants Marks and Nunez.  The second part of the analysis is whether the constitutional violation was clearly established at the time.

The Eleventh Circuit has held that "[a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right, . . . (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right, . . . or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law."  *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291-92 (11th Cir. 2009).

Existing case law is fairly clear that threats of physical violence by a correctional officer made to prevent an inmate from exercising his right to free speech is a violation of the Constitution.  *See, e.g.*, *Pittman*, 213 F. App'x 867 (threat that prison officials would do "something drastic" was an actionable First Amendment retaliation claim); *Bennett*, 423 F.3d 1247 (intimidation of citizens supporting a referendum by police constituted a "prolonged campaign of harassment" that would deter citizens from exercising their First Amendment rights); *Wilson*, 151 F. Supp. 2d 1345

(inmate stated a claim for retaliation where guard verbally harassed him and threatened him with bodily harm, including death, in response to a lawsuit filed by the inmate).  Because the violation was clearly established, Defendants Marks and Nunez are not entitled to qualified immunity.

## C. Failure to Exhaust Administrative Remedies

Finally, Defendants argue that Plaintiff did not exhaust his claim with respect to the June 29 confrontation between Defendant Marks and Plaintiff.  It is undisputed that Plaintiff filed an informal grievance, a formal grievance, and a central office appeal level regarding the June 29 encounter with Defendant Marks.  (ECF Nos. 73-11, 73-12, 79 at 58-62.)

Nonetheless, Defendants argue that the claim is unexhausted because Plaintiff failed to state in his Complaint that he was still waiting for a response to his central office appeal.  Thus, according to Defendants, Plaintiff did not exhaust his administrative remedies for this claim pursuant to Fla. Admin. Code R. 33-103.011(4).  This provision of the Florida Administrative Code provides as follows:

> "The time limit for responding to grievances and appeals may be extended for a reasonable period agreeable to both parties if the extension is agreed to in writing by the inmate.  Unless the grievant has agreed in writing to an extension, expiration of a time limit at any step in the process shall entitle the complainant to proceed to the

next step of the grievance process.  If this occurs, the complainant must clearly indicate this fact when filing at the next step.  If the inmate does not agree to an extension of time at the central office level of review, he shall be entitled to proceed with judicial remedies as he would have exhausted his administrative remedies.  The Bureau of Policy Management and Inmate Appeals will nevertheless ensure that the grievance is investigated and responded to even though an extension has not been agreed to by the inmate."

Fla. Adm. Code R. 33-103.011(4).  The central office must respond to grievance appeals within 30 calendar days from the date of the receipt of the grievance.  Fla. Adm. Code R. 33-103.011(3).

A careful reading of Rule 33-103.011(4) of the Florida Administrative Code reveals that Defendants' argument is flawed.  Defendants argue that Plaintiff was required to express in his civil rights complaint that the central office had not yet responded to his grievance appeal.  Looking at the text, however, this is not what the provision requires.

The provision states that expiration of a time period at any stage of the grievance process entitles the grievant to proceed to the next step.  When this happens, the grievant must express that the time period for FDOC to respond expired in his next filing in the grievance process.  The situation is different, however, when a grievant files a grievance appeal at the central office, the final step of the grievance process.  The provision

clearly states that at the central office level of review, if the complainant has not agreed to an extension of time and the time period expires, *he shall be entitled to proceed with judicial remedies as he would have exhausted his administrative remedies*.

This is what has happened in this case.  Plaintiff's grievance appeal concerning the June 29 encounter was received by the central office on August 12, 2013.  (ECF No. 73-13.)  A response by the central office would have been due on September 11, 2013.  Fla. Adm. Code Rule 33-103.011(3).  If Plaintiff did not agree to an extension of time and the central office failed to respond by September 11, 2013, he would then be entitled to pursue judicial remedies.  Plaintiff filed this Complaint on September 26, 2013.

Plaintiff is not required to wait for the central office to respond after the expiration of the response period, nor is there a requirement in the Florida Administrative Code that he state in his civil rights complaint that the central office has not yet responded to his appeal.

Accordingly, Plaintiff did not fail to exhaust his administrative remedies as to the June 29, 2013 encounter and, therefore, Defendants are not entitled to summary judgment for failure to exhaust.

# V.  RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that

Defendants' Motion for Summary Judgment, ECF No. 73, should be

**GRANTED** with respect to Plaintiff's retaliation claims against Defendant

Paul and **DENIED** with respect to Plaintiff's retaliation claims against

Defendants Marks and Nunez.

**IN CHAMBERS**  this 21st day of December 2015.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.