IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**CONRAAD L. HOEVER,**

    Plaintiff,

v.                                    Case No.: 4:13-CV-549-MW-GRJ

**MARKS, et al.,**

    Defendants.
_____/

### DEFENDANTS' OBJECTION TO THE REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Marks and Nunez ("Defendants"), through undersigned counsel and pursuant to Rule 72(b)(2) Federal Rules of Civil Procedure, respectfully object in part to the findings of the Defendants' motion for summary judgment Report and Recommendation (Doc. 80) as follows:

### Preliminary Statement

Under the qualified immunity section of the Report and Recommendation ("R&R"), the Defendants object to the finding that there is clearly established law to that the Defendants allege threats are sufficient to support a First Amendment claim of retaliation. (Doc. 80 at 31-32.)

## Statement of Pertinent Facts

1.  In the case, the Plaintiff's claim is that he was subject to retaliation by threats from the Defendants and Defendant Paul.[1] (Doc. 34; see Docs. 51, 57, 80.)

2.  On August 20, 2015, the Defendants and Paul moved for summary judgment. (Doc. 73.) On September 23, 2015, the Plaintiff served a response to the motion. (Doc. 79.)

3.  To support his retaliation claim against Defendant Marks, Plaintiff alleges that Marks did the following: on June 20, 2013, Marks separated him from other inmates to the vestibule area and threatened him to stop writing grievances because Bellelis does not come to work to answer Plaintiff's grievances, and kept the Plaintiff at the vestibule until the Plaintiff promised not to write any more grievances; and Marks stated on June 29, 2013, "I saw your little grievance letter you wrote. It was very nice. I will see you next week!" (Doc. 34 at 7-8, ¶¶ 4-5.) This was the entire extend of Marks' alleged conduct that Plaintiff has alleged to support his retaliation claim against Marks. (See generally id.; see also Doc. 79.)

4.  To support his retaliation claim against Defendant Nunez, Plaintiff alleges that Nunez did the following: on July 20, 2013, Nunez told Plaintiff to not

---

[1] The R&R recommended that summary judgment be granted for Defendant Paul. (Doc. 80 at 27-29, 35.)

grieve against another prison official, especially Paul because he was "one of [his' boys," showed Plaintiff a tattoo on his arm that allegedly indicates that Nunez was in a gang, and told Plaintiff that he would starve him to death, use chemical agents every day, place him in confinement, and use other inmates to help kill Plaintiff; on or after July 24, 2013, Nunez made derogatory, vulgar, and profane remarks toward Plaintiff; and on August 2, 2013, Nunez took Plaintiff outside and said ". . . I am still here! I am not going anywhere . . . I do whatever I want and no one can stop me!" (Doc. 34 at 8-10, ¶¶ 6-7.) This was the entire extend of Nunez's alleged conduct that Plaintiff has alleged to support his retaliation claim against Nunez. (See generally id.; see also Doc. 79.)

5. On December 22, 2015, the Defendants were served Magistrate Judge Gary R. Jones' R&R on the Defendants' motion for summary judgment. (Doc. 80.)[2] The R&R recommended that the Constitutional violation was clearly established, stating, "Existing case law is fairly clear that threats of physical violence by a correctional officer made to prevent an inmate from exercising his right to free speech is a violation of the Constitution." (Id. at 31-32.)

6. In support of this recommendation, the R&R cites the following cases:

---

[2] The R&R was docketed on Monday, December 21, 2015. (Doc. 80.) However, it was not served to the Defendants via the CM/ECF system until Tuesday, December 22, 2015.

Pittman v. Tucker, 213 F. App'x 867 (11th Cir. 2007) (unreported op.), Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005), and Wilson v. Silcox, 151 F. Supp. 2d 1345 (N.D. Fla. 2001).  (Id.)  No other cases are cited.  (See id.)

**Memorandum of Law**

Here, the Defendants have allegedly uttered limited statements that the Plaintiff is using to support his retaliation claim. Defendant Marks only alleged uttered threats to the Plaintiff once on June 20, 2013, followed by statement acknowledging the Plaintiff's grievance letter nine days later.  Defendant Nunez only alleged uttered threats on July 20, 2013, coupled with a demonstration of an alleged gang tattoo; allegedly uttered offensive statements on or after July 24, 2013; and allegedly uttered statements to the effect that he is there to stay.  Essentially, the Plaintiff is only supporting his retaliation claims with a incident on two separate days from each of the defendants where the Plaintiff was allegedly threatened by each defendant.  Yet the law is not clearly established that such an incident of merely threatening words is sufficient to support a First Amendment claim of retaliation.

To state a retaliation claim, the plaintiff must allege, *inter alia*, that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in conduct or speech protected under the First Amendment, and that a causal connection exists between the protected conduct and the adverse action.

4

Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (per curiam); see Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005).

Because any adverse action taken against a prisoner by a prison official (such as, disciplinary action) can be characterized by the inmate as a retaliatory act, federal courts must "carefully scrutinize" retaliation claims brought by prisoners challenging adverse actions of correctional personnel, and approach prisoner claims of retaliation with skepticism and particular care. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992 (2002).

To overcome the defense of qualified immunity, there must be a showing that a constitutional right was violated and that the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001); McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009). The type of law that places the defendant on notice

that the law is clearly established is prior *precedent* from the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court of the state where the events took place. Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1184 (11th Cir. 2009) (citation omitted); McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007).; see Rule 32.1, Fed. R. App. P.; 11th Cir. Rule 36-2.  Yet there need not be case law if "the very action in question has previously been held unlawful." Amnesty Int'l, USA, 559 F.3d at 1185 (quoting Hope v. Pelzer, 536 U.S. 730, 741, 122 S. Ct. 2508 (2002)).  The entitlement to qualified immunity is based on the facts and the law present when the defendant acts. Jackson v. Humphrey, 776 F.3d 1232, 1242 (11th Cir. 2015).  Generally, fact-specific precedent is necessary to provide the officer fair warning of the applicable law. Gibbons v. McBride, __ F. Supp. 3d __, 2015 WL 5017021, at *19 (S.D.Ga. Aug. 21, 2015) (citing Jay v. Hendershott, 579 F. App'x 948, 951 (11th Cir.2014), and Oliver v. Fiorino, 586 F.3d 898, 907 (11th Cir.2009)). The clearly established law inquiry must be evaluated by the specific context of the case, and not as a broad general proposition. Oliver, 586 F.3d at 907 (citing Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808 (2009)).  "[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Id. (citing Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 926, and Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir.1997)).

In support of the assertion that the law is clearly established, the R&R states as follows:

> Existing case law is fairly clear that threats of physical violence by a correctional officer made to prevent an inmate from exercising his right to free speech is a violation of the Constitution. See, e.g., Pittman, 213 F. App'x 867 (threat that prison officials would do "something drastic" was an actionable First Amendment retaliation claim); Bennett, 423 F.3d 1247 (intimidation of citizens supporting a referendum by police constituted a "prolonged campaign of harassment" that would deter citizens from exercising their First Amendment rights); Wilson, 151 F. Supp. 2d 1345 (inmate stated a claim for retaliation where guard verbally harassed him and threatened him with bodily harm, including death, in response to a lawsuit filed by the inmate). Because the violation was clearly established, Defendants Marks and Nunez are not entitled to qualified immunity.

(Doc. 80 at 31-32.) First, Pittman and Wilson do not qualify as controlling authority for clearly established law. Pittman is an unreported case, not precedent, and does not cite to any case for the proposition that threats of physical violence alone is the type of adverse action for a retaliation claim, see Pittman, 213 F. App'x at 871-72. Similarly, Wilson is not precedent that qualifies as clearly established law, and does not cite to any case for the proposition relied upon, see Wilson, 151 F. Supp. 2d at 1351. Wilson only states that the adverse action does not need to rise to the level of a separate constitutional violation.[3] Id. (citing Thomas v. Evans, 880 F.2d 1235, 1242

---

[3] Examples of an adverse action that does not rise to the level of a separate constitutional violation are as follows: prison transfer due to protected activity, Bridges v. Russell, 757 F.2d 1155 (11th Cir. 1985); and confiscation of personal

7

(11th Cir.1989)).

Second, Bennett does not stand for the proposition that threats of violence alone qualify the type of adverse action for a retaliation claim. See Bennett, 423 F.3d at 1252. Instead, the Eleventh Circuit analyzed the adverse action specific to the facts of the case after citing to a Fourth Circuit case that stated as follows: "Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." Id. (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2002)). Ultimately, the adverse action was determined to be "a prolonged and organized campaign of harassment by local police officers" Id. at 1254. The adverse action taken by the police officers was the following:

> Among many other acts of intimidation, they allege the defendants took down license tag numbers of cars at a forum in support of the referendum, surveilled the plaintiffs' homes and businesses, set up roadblocks near their homes, stopped their cars without reason and issued false traffic citations, accessed government databases to obtain confidential information on the plaintiffs, attempted to obtain a warrant for their arrest on trumped-up environmental charges, and mailed flyers to 35,000 homes in Forsyth County calling the plaintiffs the "real criminals," members of a "chain gang," and "the same type of criminals that terrorize Forsyth County."

---

property due to protected activity, Hall v. Sutton, 755 F.2d 786 (11th Cir. 1985).

Id. at 1249.

In the instant case, there is an incident of alleged threatening comments by Defendant Marks on June 20, 2013, and an incident of alleged threatening comments by Defendant Nunez on July 20, 2013, not the prolonged campaign of harassment the plaintiffs endured in Bennett. When threats are cited in examples of the type of adverse action for a retaliation claim, the threats are coupled with other actions. See, e.g., Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008) (threats along with disciplinary reports, confinement, and threats of exposure to more punishment). Further, about a one year and a half after the Pittman case, the Eleventh Circuit also held in Hernandez and stated in an unreported opinion that "Hernandez's allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim." Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) (unreported op.). Nevertheless, the Defendants could not find any authority that would qualify as clearly established law that would have placed them on notice that their alleged verbal threats would be sufficient to qualify as the adverse action for a retaliation claim.

**WHEREFORE**, for the foregoing reasons, defendants Marks and Nunez respectfully request the Court to grant Defendants' Motion for Summary Judgment (Doc. 73) in the entirety and disapprove the Report and Recommendation in part regarding the finding that the defense of qualified immunity is inapplicable to them.

Respectfully submitted,

**PAMELA JO BONDI**
**ATTORNEY GENERAL**

/s/ Marcus O. Graper
**MARCUS O. GRAPER**
**Assistant Attorney General**
**Florida Bar No. 0044049**
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
marcus.graper@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I hereby certify** that the foregoing *Defendants' Objection to the Report and Recommendation Regarding Defendants' Motion for Summary Judgment* has been furnished by U.S. Mail to *pro se* **Conraad Hoever, DC# L85966**, Madison Correctional Institution, 382 S.W. MCI Way, Madison, Florida 32340, on the 5th day of January, 2016.

/s/ Marcus O. Graper
MARCUS O. GRAPER