UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**CONRAAD HOEVER, DC# L85966,**

   Plaintiff,

v                                                                 Case No:   4:13-cv-549-MW-GRJ

**MARKS, et. al,**

   Defendants.
_____/

## DEFENDANTS' TRIAL BRIEF

Defendants **Marks**, **Nunez** and **Paul** ("Defendants"), through counsel and pursuant to the Court's order (Doc. 98 at 4, § IV.B.), hereby submit the following Trial Brief on the legal issues in this case:

## PRELIMINARY STATEMENT

1.   At all relevant times, Plaintiff Conraad Hoever, DC# L85966 ("Hoever" or "Plaintiff") was and is a state prisoner in the custody of the Florida Department of Corrections ("Department" or "FDOC").  The events alleged in the Complaint occurred from June 2013 through August 2013 at Franklin Correctional Institution ("CI") where Plaintiff was incarcerated as a prisoner and the Defendants were employed with the FDOC.  [Doc. 34]   Plaintiff *alleges* the Defendants violated his constitutional rights by retaliating against him because of previously filed grievances. [Id.]   Plaintiff's due process claims have been dismissed and this matter is proceeding solely on Plaintiff's individual capacity retaliation claims for nominal damages. [Doc. 57, pg. 1-2]

## ALLEGATIONS

2.   On June 6, 2013, Defendant Paul threatened to physically harm an unidentified

1

number of inmates, including Plaintiff, if they "made a threat or said [sic] anything improper against any officer," and also threatened to use chemical agents against inmates to stop them from filing grievances or otherwise threatening correctional officers.  [Doc. 34, pg. 6]   Plaintiff admits that he did not raise any complaints to any prison officials about these alleged threats.   [Id. pg. 7]

   3. On June 20, 2013, Defendants Marks and Paul approached him, set him apart from the other inmates in his housing dorm, made him promise to stop filing grievances, threatened him with disciplinary confinement and "severe consequences" if he did not stop filing grievances and only returned him to his dorm because he promised to stop filing grievances.  [Id. pg. 7-8] Plaintiff alleges that he filed a grievance about this incident.   [Id. pg. 8]

   4. On June 29, 2013, Defendant Marks approached him and said "I saw your little grievance letter you wrote.  It was very nice.  I will see you next week!"  [Id. pg. 8]   Plaintiff alleges that Defendant Paul observed this exchange.  [Id. pg. 8]   Plaintiff alleges that he filed a grievance regarding this exchange that referenced his June 20, 2013 encounter with Defendants Marks and Paul.   [Id. pg. 8]

   5. On July 20, 2013, Defendant Nunez and a K. Hampton took him out of the lunch feeding line to stand in the sun by the fence and that Defendant Nunez told him to   never write another grievance against any prison official, especially Defendant Paul, claiming that Defendant Paul was "one of [his] boys."   [Id. pg. 8-9]   Plaintiff alleges that Defendant Nunez revealed that he and Defendant Paul were affiliated with a gang of prison officials (identified by face-like tattoos) that "don't give a f*** about people like [Plaintiff]."   [Id. pg. 9]   Plaintiff also alleges that Defendant Nunez threatened to starve him to death, place him in an unidentified form of confinement and empty a canister of chemical agents on him every day if he filed any grievances against any correctional officers affiliated with the gang.   [Id.]   Plaintiff also alleges that

Defendant Nunez threatened to have inmates who work for the gang assist him in his attempts to kill Plaintiff if he continued to file grievances against correctional officers affiliated with the gang. [Id.]  Plaintiff alleges that Defendant Nunez stated that he was giving Plaintiff a final warning to stop filing grievances and that his next grievance would be his death sentence.  [Id.]

6.    Plaintiff alleges that he filed a grievance and a motion in another lawsuit, Hoever v. Bellelis, Case No.: 4:13-cv-372 WS-CAS, about this incident.  [Id. pg. 10]  Plaintiff alleges that Defendant Nunez stared at him and mumbled vulgar, profane and derogatory remarks to him whenever he saw him after he filed the motion.  [Id.]  Plaintiff also alleges that on August 2, 2013, Defendant Nunez approached Plaintiff and said "you can kiss the Judge's butt.  I am still here!  I am not going anywhere.  No one can do a damn thing to me.  I do whatever I want and no one can stop me!"  [Id.]  Plaintiff alleges that he filed an informal grievance regarding this incident, but that it was returned without action.  [Id.]

7.    On August 20, 2013, at approximately 2:00AM, Plaintiff alleges Defendant Paul asked him why he wrote that he threatened him and to state when he threatened him.  [Id. pg. 11] Plaintiff alleges that he did not answer Defendant Paul's questions and that Defendant Paul and the other correctional officers stared at him for about a minute then walked away.  [Id.]

8.    Based on these claims, Plaintiff alleges that Defendants violated the First Amendment by harassing and threatening him as part of a conspiracy to retaliate against him for filing grievances and lawsuits, and otherwise complaining about the conditions of his incarceration.  [Id.]  Plaintiff also alleges that he experienced "physical injuries, personal humiliation, mental anguish, physical and mental intimidation, blemish to his prison record, impairment of his reputation, permanent defamation and irreparable harm now and in the future" as a result of Defendants' actions.  [Id.]

3

**DEFENDANTS' ASSERTIONS**

10. Hoever has been in the custody of the FDC since April 27, 2010, and is serving a 15 year sentence for the criminal conviction of lewd and lascivious molestation of a person between 12 and 16 years of age. Hoever was housed at Franklin CI from February 27, 2010, to December 12, 2013; was assigned to bunk 1107U in E-dormitory from April 15, 2013, to August 17, 2013; and assigned to cell 2105U in A-dormitory from August 17, 2013, to September 13, 2013.

11. Hoever cannot demonstrate the facts alleged in this case against defendants Marks and Paul. Hoever alleges that these defendants threatened him in E-dormitory during the night shift at Franklin CI on the following days: the 6th, 20th, and 29th days of June, 2013. These two defendants were assigned to Franklin CI on the three aforementioned days during the night shift. Hoever also alleges that Paul threatened him in A-dormitory on August 20, 2013, during the night shift at Franklin CI. Paul was assigned to the night shift on this day.

12. On June 6, 2013, Caleb Paul ("Paul") was a correctional officer assigned to Internal Security, entered E-dormitory once late at night, and did not issue any threats of physical harm to anyone.

13. On June 20, 2013, Paul was the housing sergeant assigned to E-dormitory and did not issue any threats of physical harm to anyone. On June 20, 2013, Robert Marks ("Marks") was the housing officer to H-dormitory, did not enter E-dormitory, and did not issue any threats of physical harm to anyone..

14. On June 29, 2016, Marks was assigned as the housing officer to H-dormitory and had a secondary assignment as a member of the Emergency Response Team, which was composed of several other correctional officers. He entered E-dormitory with other officers, but did not interact with Hoever in any way and did not

threaten Hoever. On June 29, 2016, Paul was the housing sergeant assigned to E-dormitory, but did not witness Marks interact with Hoever in any way.

15. On August 20, 2013, Paul did not enter A-dormitory on or about the time alleged by Plaintiff, and did not threaten Hoever in any way.

16. Hoever cannot demonstrate the facts alleged in this case against Defendant Nunez. Hoever alleges that this defendant threatened him in the Mess Hall at Franklin CI during the day shift on the following days: July 20, 2013, and August 2, 2013. This defendant was assigned to Mess Hall Supervision at Franklin CI on the two aforementioned days during the day shift.

17. On July 20, 2013, Sergeant John Nunez ("Nunez") interacted with Hoever in the Mess Hall, but did not threaten him in any way and did not show him a tattoo close to his armpit to indicate that the tattoo signified that he was in a gang with Paul. On August 2, 2013, Nunez did not threaten Hoever in any way.

## **MEMORANDUM OF LAW AND ARGUMENT**

19. To establish a 42 U.S.C. § 1983 First Amendment claim for a retaliatory disciplinary report, the plaintiff has the burden of proving that "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." Allen v. Sec'y, Fla. Dep't of Corr., 578 F. App'x 836, 839-40 (11th Cir. 2014) (unreported op.) (quoting O'Bryant v. Finch, 637 F.3d 1207, 1217 (11th Cir. 2011)); Moton v. Cowart, 631

F.3d 1337, 1341 (11th Cir. 2011) (citations omitted).

20. Regarding the first element (and third element), a prisoner's filing of a grievance is protected speech under the First Amendment. Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006); see, e.g., Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008).

21. "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005). Adverse action depends on the context. Id. at 1252. To determine whether the speaker's First Amendment rights were adversely affected, the following is analyzed: "status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." Id. (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2002)). Examples of retaliatory acts include "prolonged and organized campaign of harassment," Bennett, 423 F.3d at 1254; see, e.g., Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008) (the campaign of harassment against inmate was exposure to mental abuse, physical intimidation, harassment, verbal threats of injury and punishment, false disciplinary rule violation, confinement, and threats of more punishment if he continued to pursue grievances), false charges of a prison rule violation, O'Bryant, 637 F.3d at 1212, and use of excessive force, Benton v. Rousseau, 940 F. Supp. 2d 1370, 1377 (M.D.Fla. 2013) (officer's use of pepper spray in response to prisoner's complaint about the temperature within the transport vehicle in a non-disruptive manner). An example of a defendants' action that does not constitute a retaliatory act includes

expressing displeasure with the plaintiff's speech, Ziegler v. Martin County Sch. District, ___ F.3d ___, no. 15-11441, 2016 WL 4039667, at *12 (11th Cir. July 28, 2016).

22. Regarding the second element, the plaintiff must show that the threat of discipline he received would likely deter a person of ordinary firmness from the exercise of First Amendment rights. Smith, 532 F.3d at 1277; Bennett 423 F.3d 1247, 1254.

23. To demonstrate if the alleged retaliatory conduct deterred a person of ordinary firmness, the plaintiff must show that the defendant's actions resulted in something more than a "de minimis inconvenience" to the exercise of his First Amendment rights because it "would trivialize the First Amendment to hold the harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." Bennett, 423 F.3d at 1252 (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)). A prior threat or a continuing threat of a false disciplinary report "would not deter a reasonable inmate from pursuing his grievance." Cole v. Secretary Dep't of Corr., 451 F. App'x 827 (11th Cir. 2011) (unreported op.).

24. Regarding the third element, the plaintiff must show that the alleged retaliatory conduct would not have occurred but for the retaliatory motive. Hartman v. Moore, 547 U.S. 250, 260, 126 S. Ct. 1695 (2006); Allen, 578 F. App'x at 840 (citing O'Bryant, 637 F.3d at 1217); see, e.g., Jackson v. Fair, 846 F.2d 811, 820 (1st Cir. 1988) (institutional transfer alleged to have been done out of retaliation). "[T]he lack of complaints about or grievances filed against a particular defendant undermines a claim of retaliatory motive." Johnston v. Young, No. 4:11-cv-00021-MP-CAS, 2014 WL

1303653, at *8 (N.D.Fla. Mar. 28, 2014) (slip copy) (citing Glenn v. Gillis, 5:12-cv-260-RS-GRJ, 2013 WL 4096206 (N.D.Fla. Aug.13, 2013), and Thomas v. Lawrence, 421 F. App'x 926, 929 (11th Cir. 2011) (unreported op.)).

25. If the plaintiff has shown all three elements of the retaliation claim, the burden shifts to the defendant(s) to show that the same action would be taken in the absence of the protective activity. Moton, 631 F.3d at 1341-42. If the defendant(s) meet this burden, the plaintiff's retaliation claim fails. Id.

26. Yet "[t]he relevant showing [for retaliation] cases must be more than the prisoner's personal belief that he is the victim of retaliation." Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (internal quotations omitted). Further, when prisoners raise allegations of retaliation, doubt is not automatically cast upon the defendant's action solely because the plaintiff was engaged in protected speech or conduct. Adams v. James, 784 F.2d 1077, 1082 (11th Cir. 1986). Instead, a presumption of legitimacy is accorded to the official conduct of government employees. National Archives & Records Admin. v. Favish, 541 U.S. 157, 174, 124 S. Ct. 1570 (2004). Because it is inevitable that prisoners will be at odds with prison officials' actions and then can easily fabricate claims of retaliation, such claims should be reviewed with skepticism. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

27. In this case, the question for the jury is whether: Defendants Marks, Nunez, and Paul took adverse action against Plaintiff, Conraad Hoever; that the Plaintiff's protected speech was the motivating factor for each Defendant's action; that the adverse action of each defendant would likely deter a similarly situated reasonable

person in Plaintiff's position from exercising his First Amendment rights by engaging in protected speech; or Defendants would have taken the same action in the absence of the protected speech.

28.  Finally, the evidence will demonstrate: the Defendants did not engage in conduct that is considered adverse action toward the Plaintiff; that if the alleged conduct occurred, the Plaintiff's protected speech was not the motivating factor for the conduct; that the alleged conduct would not deter an inmate of ordinary firmness from exercising their First Amendment rights; and that Defendants would have taken the same action absent the Plaintiff's protected speech.

Respectfully submitted,

**PAMELA JO BONDI**
**ATTORNEY GENERAL**

 /s/ William W. Gwaltney
William W. Gwaltney
Assistant Attorney General
Florida Bar No: 738778
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
william.gwaltney@myfloridalegal.com
Attorney for: Marks, Nunez, and Paul

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendants' Trial Brief* has been furnished by U.S. mail to: Conraad Hoever, DC# L85966, Madison Correctional Institution, 382 Southwest MCI Way, Madison, Florida, 32340-4430, on this

12th day of August, 2016.

                                        /s/ William W. Gwaltney
                                        William W. Gwaltney
                                        Assistant Attorney General